618 P.2d 1078

STATE of Arizona ex rel. Andy
BAUMERT, Phoenix City
Attorney, Petitioner,

v.

The SUPERIOR COURT of the State of
Arizona, In and For MARICOPA COUN-
TY, and The Honorable Howard F.
Thompson, judge thereof; The Munici-
pal Court of the City of Phoenix; and
Scott M. Barrett, Defendant and Real
Party in Interest, Respondents.

No. 14906.

Supreme Court of Arizona,
En Banc.

Oct. 9, 1980.

Andrew Baumert, Phoenix City Atty. by
George H. Bonsall, Phoenix, for petitioner.

Patten, Montague & Arnett by Wayne C.
Arnett, Tempe, for respondent Barrett.

HAYS, Justice.

Petitioner, the State of Arizona ex rel.
Andy Baumert, brought this special action
urging that a judge of the Superior Court
abused his discretion and exceeded his juris-
diction by ordering a reversal of the judg-
ment of the Municipal Court and by re-
manding for a trial by jury in that court.
We accepted jurisdiction pursuant to the
Arizona Constitution, article 6, § 5, and 17A
A.R.S. Rules of Procedure for Special Ac-
tions, rules 3(b) and 3(c). We agree that
defendant is not entitled to a trial by jury
on the charge of disorderly conduct. In this
opinion we do not decide, however, that as
to all class–1 misdemeanors the right to a
jury trial is nonexistent. This court sets
forth guidelines below for determining
when a jury trial is appropriate but we will
not render an advisory opinion regarding

each of the over 133 class–1 misdemeanors listed in the Revised Criminal Code.[1]

Defendant/Real Party in Interest, Scott M. Barrett, was charged in the Municipal Court of the City of Phoenix with disorderly conduct, a class–1 misdemeanor, A.R.S. § 13–2904(A)(1). The penalty for a class–1 misdemeanor is six months imprisonment [A.R.S. § 13–707(1)] and a maximum fine of $1,000 [A.R.S. § 13–802(A)]. No other civil penalty or forfeiture is authorized for this offense except for a term of probation [A.R.S. § 13–901(A), A.R.S. § 13–902(A)(3)]. Defendant timely demanded and was denied a jury trial in the Municipal Court. After a trial to the court a judgment of guilty was entered, sentence suspended, and 1–year probation was imposed. Defendant appealed the judgment and sentence, based on the record in the lower court, to the Maricopa County Superior Court. One of the issues on appeal was defendant's denial of a jury trial. The judge of the Superior Court ordered that the severity of the punishment authorized by statute for disorderly conduct entitled defendant to a jury trial and he remanded the case to the lower court. The State of Arizona filed this petition for special action raising the question of whether there exists a federal and state constitutional right to a jury trial in a case of disorderly conduct for which the maximum penalty is six months imprisonment and a fine of $1,000.

The U. S. Constitution, amendment 6; and article 2, § 24 of the Arizona Constitution provide that the accused has the right to a speedy and public trial by an impartial jury in criminal prosecutions. Despite the all–inclusive language, considerable case law has developed establishing that the right to a trial by jury does not extend to "petty" offenses in any court, be it federal, state or municipal. *District of Columbia v. Clawans*, 300 U.S. 617, 57 S.Ct. 660, 81 L.Ed. 843 (1937); *Callan v. Wilson*, 127 U.S. 540, 8 S.Ct. 1301, 32 L.Ed. 223 (1888); *O'Neill v. Mangum*, 103 Ariz. 484, 445 P.2d 843 (1968);

*Rothweiler v. Superior Court*, 100 Ariz. 37, 410 P.2d 479 (1966). The United States Supreme Court has held that the definition of a "petty" as compared to a "serious" offense has been left to the courts, *Duncan v. State of Louisiana*, 391 U.S. 145, 160, 88 S.Ct. 1444, 1453, 20 L.Ed.2d 491 (1968):

> "There is no substantial evidence that the Framers intended to depart from this [summary trials without a jury] established common–law practice, and the possible consequences to defendants from convictions for petty offenses have been thought insufficient to outweigh the benefits to efficient law enforcement and simplified judicial administration resulting from the availability of speedy and inexpensive nonjury adjudications. These same considerations compel the same result under the Fourteenth Amendment. Of course the boundaries of the petty offense category have always been ill–defined, if not ambulatory. In the absence of an explicit constitutional provision, the definitional task necessarily falls on the courts, which must either pass upon the validity of legislative attempts to identify those petty offenses which are exempt from jury trial or, where the legislature has not addressed itself to the problem, themselves face the question in the first instance. In either case it is necessary to draw a line in the spectrum of crime, separating petty from serious infractions."

The defendant stresses that in *Duncan* the court instructs us to refer to objective criteria, chiefly the existing laws and practices in the *"nation."* In his opposing memorandum, the defendant emphasizes federal law but fails to mention that the United States Supreme Court looked to the federal system, as well as the penalties imposed in each of the 50 states, when determining the laws of the *nation.* We therefore look to the law of Arizona as well as federal authority.

---

1. This list includes crimes which range from those involving moral opprobrium such as fraudulent use of a credit card, § 13–2105, to regulatory offenses such as a citrus fruit standardization violation, § 3–466.

In *Rothweiler, supra,* this court set forth the guidelines for analyzing whether an offense is petty or serious:

"In determining whether a crime is a petty offense that constitutionally may be tried without a jury the [1] severity of the penalty inflictable, as well as the [2] moral quality of the act and [3] its relation to common law crimes, must be considered...." 410 P.2d at 483.

■ First, a defendant who did not have the right to trial by jury at the common law does not have the right to such a trial in Arizona for a violation of state offenses. *O'Neill, supra,* and *Goldman v. Kautz,* 111 Ariz. 431, 531 P.2d 1138 (1975). Justices of the peace in 1776 would have summarily decided what is now our disorderly conduct case.

A.R.S. § 13–2904(A)(1), with which defendant is charged, reads:

"A. A person commits disorderly conduct if, with intent to disturb the peace or quiet of a neighborhood, family or person, or with knowledge of doing so, such person:

"1. Engages in fighting, violent or seriously disruptive behavior; ..."

This disorderly conduct statute also includes in 2 through 6, violations for unreasonable noise, offensive language and recklessly handling a dangerous weapon in public. At common law we find comparable offenses were punished summarily, IV Blackstone Commentaries 278. Further indication that the current crime of disorderly conduct by engaging in fighting or seriously disruptive behavior is related to a common law crime triable without a jury is found in a "Collection of Petty Federal Offenses and Trial By Jury." 39 Harv.L.Rev. 917, 928 (1926). *See also* the historical survey in *State v. Maier,* 13 N.J. 235, 99 A.2d 21 (1953). (Denial of jury trial for charges of disorderly conduct upheld constitutional attack where maximum sentence was 1 year). And *United States Fidelity & Guaranty Co. v. State,* 65 Ariz. 212, 177 P.2d 823 (1947). Therefore, the crime of disorderly conduct in the new code is related to common law crimes against the public order, contra to defendant's contention that A.R.S. § 13–2904(A)(1), disorderly conduct, is "not the same 'petty' crime as under the common law."

■ Second, the moral quality of being charged with disorderly conduct by fighting or seriously disruptive behavior must be considered. It cannot be said to be any more reproachful than drunken and disorderly conduct nor simple assault and battery which this court found not to involve moral turpitude. *O'Neill* and *Goldman, supra.* This court previously said in *O'Neill, supra,* 445 P.2d at 844:

"Insofar as the 'moral quality of the act' is concerned, in today's affluent and self–indulgent society it can hardly be suggested that one charged or guilty of mere 'drunk and disorderly' conduct is a depraved and inherently base person. In and of itself the charge does not involve serious moral turpitude. We cannot hold that the moral quality of the act is a crime of such nature as warrants a jury trial as a matter of constitutional right where that right did not exist at common law."

*Cf. State v. Superior Court, in and for Cty. of Pima,* 121 Ariz. 174, 589 P.2d 48 (App. 1978) (conviction of shoplifting carries the onus of moral turpitude and relates to the serious common law crime of larceny).

■ There remains only the severity of the penalty to consider. It is the law, federal and state, that a possible penalty of a 6–month jail sentence is not so severe as to require trial by jury. *Baldwin v. New York,* 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970). Nor is the addition of a $300 fine to a 6–month jail sentence upon conviction of the offense of drunk and disorderly severe. *O'Neill, supra.* The issue thus becomes whether the increase in the maximum fine from $300 to $1,000 is sufficiently serious to require a trial by jury.

In deciding whether the amount of a fine is serious, the United States Supreme Court has looked to the definition of petty offenses in 18 U.S.C. § 1(3), which provides that "the penalty does not exceed imprisonment for a period of 6 months or a fine of

not more than $500, or both." However, the Supreme Court stressed in *Muniz v. Hoffman*, 422 U.S. 454, 95 S.Ct. 2178, 45 L.Ed.2d 319 (1975), that this definition should not be accorded "talismanic significance" and declined to adopt the $500 maximum provided for in section 1(3) as the invariable criterion for what constitutes a petty offense. "For determining the seriousness of the offense, imprisonment and fine are intrinsically different." *Id.* at 477, 95 S.Ct. at 2191. *Muniz, supra,* compels us to make a case—by—case evaluation of the seriousness of the risk and extent of the possible deprivation. This we have done in concluding that a $1,000 fine is not so serious a penalty as to require a trial by jury. In adopting this approach, we reject the drawing of the line of demarcation between petty and serious offenses based solely upon the federal statute 18 U.S.C. § 1(3), as was done by the Ninth Circuit Court of Appeals in *United States v. Hamdan*, 552 F.2d 276 (1977).

Petitioner places reliance on *Seven Rivers Farm, Inc. v. Reynolds*, 84 N.M. 789, 508 P.2d 1276 (1973), where the Supreme Court of New Mexico upheld the imposition of a possible $1,000 fine upon a corporation charged with contempt without a trial by jury. We recognize that this was a fine imposed upon a corporation, not an individual, but we will view the amount of a $1,000 fine in today's standards, as was done by the New Mexico Supreme Court.

In *Clawans, supra,* and *State v. Cousins*, 97 Ariz. 105, 397 P.2d 217 (1964), the changing attitudes from generation to generation were considered in determining that a penalty once regarded as mild, such as the lash and stocks, may come to be viewed as harsh.

> "Conversely, we believe that a fine which might once have been considered severe or burdensome, such as $1,000 might now be felt to be mild." *Seven Rivers, supra,* 508 P.2d at 1282.

We agree with petitioner's discussion of the impact of inflation in our economy and we "use some modicum of common sense and maintain contact with reality," *Seven Rivers, supra,* 508 P.2d at 1282, in recogniz-

ing that a $1,000 fine in Arizona in 1980 is not any more serious than the $500 maximum fine, the limit set in the Federal Criminal Code since 1948, was at that time.

We find that a maximum penalty of 6 months imprisonment and a possible maximum penalty of $1,000 fine for the offense of disorderly conduct does not constitutionally require a trial by jury because the penalty is not serious, the offense was summarily decided at common law, and the offense does not involve an appreciable degree of moral turpitude.

We vacate the order of the Superior Court and remand for proceedings consistent herewith.

Relief granted.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and CAMERON and GORDON, JJ., concur.