792 P.2d 779

**STATE of Arizona, Appellee,**

v.

**Mark Preston HARRISON, Appellant.**

**No. 1 CA–CR 89–007.**

Court of Appeals of Arizona,
Division 1, Department C.

March 1, 1990.

Reconsideration Denied March 28, 1990.

Review Denied June 26, 1990.

Robert K. Corbin, Atty. Gen. by Jessica G. Funkhouser, Chief Counsel, Crim. Div., and Richard J. Graci, Asst. City Prosecutor, Phoenix, for appellee.

Mark P. Harrison, Phoenix, in pro. per.

## OPINION

GERBER, Judge.

Appellant Mark Preston Harrison (defendant) was charged with running a red light in violation of A.R.S. § 28–645(A)(3)(a), failing to provide proof of insurance in violation of A.R.S. § 28–1253(D), and driving a motor vehicle in violation of a license restriction under A.R.S. § 28–424 requiring him to wear eye glasses. The violations were consolidated and tried before the Phoenix City Court.[1] Defendant was found in violation on all three counts. He was fined $408 and had his license suspended 90 days for running the red light and failing to provide proof of insurance, and was fined an additional $40 for driving without glasses. He appealed the municipal court's decision to the superior court, which affirmed the decision of the municipal court. Defendant now brings his appeal to this court.[2]

On appeal to the superior court, defendant contended that he was unconstitutionally denied the right to a jury trial. He now contends that requiring proof of financial responsibility violates the constitutional prohibition against cruel and unusual punishment and that the court's decision not to sentence him to driver education classes violates constitutional equal protection guarantees.

Defendant's first contention, that he was unconstitutionally denied the right to a jury trial,[3] lacks merit for two reasons.

In the first place, defendant had no right to a jury. The Arizona Constitution guarantees a criminal defendant the right to a jury trial. Ariz. Const. art. 2, §§ 23, 24. This right, however, extends only to serious, not petty, crimes. *Rothweiler v. Superior Court*, 100 Ariz. 37, 410 P.2d 479 (1966). Courts use a three-prong test to determine whether the crimes charged constitute a non-petty violation: (1) the defendant is exposed to a severe penalty, i.e., a penalty in which the exposure exceeds six months imprisonment or $1,000 in fines; (2) the act involves moral turpitude; (3) the crime has traditionally merited a jury trial. *State ex rel. Baumert v. Superior Court*, 127 Ariz. 152, 618 P.2d 1078 (1980). Each prong is independently sufficient to give rise to a jury trial.

The test to determine whether the right to a jury trial exists is not mandated by legislation but is a judicial doctrine subject to modification. In *Rothweiler*, a potential sentence imposing a $300 fine, six months in jail and a three-month license suspension was found to merit a jury trial. In *Baumert*, the court found no "talismanic significance" in either the $300 amount found in *Rothweiler* or the $500 limit set in the federal criminal code in 18 U.S.C. § 1(3), and held that a fine of $1,000 was not severe enough to warrant a jury trial. *Baumert*, 127 Ariz. at 154–55, 618 P.2d at 1080–81. The *Baumert* court recognized that devaluation of the dollar and other economic changes make any fine an arbitrary trigger for a jury trial. *Id.*

We decline to rivet the right to a jury trial to the $1,000 amount set in *Baumert*.

---

1. Running a red light and failing to provide proof of insurance are civil matters, while driving in violation of a restricted license is a criminal misdemeanor. Upon consolidation and pursuant to Rule 15 of the Arizona Rules of Procedure—Civil Traffic Cases, rules governing criminal cases were applied in municipal court.

2. This court has jurisdiction for appeals involving the "validity of a tax, impost, assessment, toll, municipal fine or statute." A.R.S. § 22–375(A). Defendant challenges the constitutional validity of the statutes involved and attacks the imposition of the fines. His appeal, therefore, falls within the limited jurisdiction this court possesses to review such actions.

3. We address this issue pursuant to this court's jurisdiction to review for fundamental error, A.R.S. § 13–4035, even though this issue would otherwise be nonjurisdictional.

The *Baumert* court raised that amount in order to address economic forces at play in 1980. The $1,000 figure in 1990, however, is not as significant a sum as it was in 1980. In fact, the federal government has raised the amount of a fine for a petty infraction to $5,000. 18 U.S.C. §§ 19, 3571 (1988) (originally enacted as 18 U.S.C. § 1(3) (1982)). The legislative history of the act indicates that Congress raised the amount of the fines to compensate for economic change:

> These [previous] statutory limits are largely the products of an earlier era when the wage earner achieved a yearly income considerably lower than that common today, and when inflation had not yet reduced the value of currency to its present level.
>
> . . . .
>
> ... It is with the intent of enhancing the ability of the courts to fashion remedies appropriate to offenses by providing maximum fines at levels that are suitable to our times—and at levels that will help eliminate the popular view that certain offenses will lead only to a nominal fine equivalent to a minor cost of doing business—that the Committee has drafted the provisions of this subchapter.

Senate Rep. No. 98–225, Senate Committee on the Judiciary, 98th Cong., *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3286–87. In Arizona, however, a crime is still considered serious if its fine exceeds $1,000. It would be incongruous to classify a crime as petty in one court system and not in another based merely on its fine. *See State v. City Court of the City of Tucson*, 157 Ariz. 599, 760 P.2d 599 (App. 1988), *opinion vacated on other grounds, State ex rel. Dean v. Dolny*, 161 Ariz. 297, 778 P.2d 1193 (1989). We therefore find that the fines totalling less than $500 in this case do not constitutionally require a jury trial.

Another way to judge the seriousness of an offense is to examine the other penalties associated with it. We therefore next examine whether a 90–day license suspension is sufficient additional punishment to make defendant's crimes serious.

■ There are three reasons why suspending an operator's license for three months is not a serious enough penalty to warrant a jury trial, even when considered in light of defendant's fines. First, the language of the statutes makes it clear that driving is a privilege, not a right. A.R.S. § 28–473(A) (amended, 1990).[4] The loss of a privilege is not nearly so serious or burdensome as the loss of a recognized right. Second, the legislature has demonstrated that in this context a license suspension is not as serious a sanction because the statute expressly provides that license suspension is a civil sanction, not criminal. It carries none of the stigma of criminal punishment. Third, the punishment itself is light when compared to second and third violations, which may result in suspensions for six months and one year respectively. In comparison, a three-month suspension of driving privileges is not so onerous, especially since alternative forms of transportation exist. Based upon these factors, a three-month license suspension, even when combined with the fines assessed, is not sufficient punishment to render the crime serious enough to warrant a jury.

■ The most important gauge for determining whether a crime is serious is a defendant's maximum exposure to imprisonment. *Blanton v. City of North Las Vegas, Nev.*, 489 U.S. 538, 109 S.Ct. 1289, 1292, 103 L.Ed.2d 550 (1989). The possibility of a sentence exceeding six months is sufficiently real by itself to warrant a jury trial. *See also Dean, supra; Baumert, supra.* Here, defendant's maximum exposure was four months, which is insufficient to trigger a jury. However, Arizona law holds that, when a defendant is charged with several petty offenses, courts only look at prison time *actually* imposed to determine whether the right to a jury exists. *Bruce v. State*, 126 Ariz. 271, 614

---

4. Both the current A.R.S. § 28–473 and its predecessor share identical language: "Any person who drives a motor vehicle on a public highway within this state at a time when his *privilege* to do so is suspended, revoked, cancelled or refused is guilty of a class 1 misdemeanor...." A.R.S. § 28–473(A). (Emphasis added.)

P.2d 813 (1980). Here, no actual prison time was imposed. Defendant, therefore, fails to satisfy the minimum criteria in either *Blanton* or *Bruce* regarding incarceration. Even considering his fines and license suspension, defendant's punishment still lacked the severity to generate a right to a jury.

■ The second prong of the test requires a jury trial for any crime involving moral turpitude. *Baumert, supra; Rothweiler, supra.* Such a crime has been defined as one that brands someone as a "depraved and inherently base person." *O'Neill v. Mangum,* 103 Ariz. 484, 445 P.2d 843 (1968). "Moral turpitude" refers to acts that adversely reflect on honesty, integrity, or personal values. *Dean,* 161 Ariz. at 300, n. 3, 778 P.2d at 1196, n. 3. Traffic violations in themselves do not brand a person as depraved and inherently base or reflect adversely on personal values. The *Dean* court suggests a further inquiry into any other consequences that flow from an act, not merely whether those consequences reflect adversely on a person's moral character. *Dean, id.* In *Dean,* ₀the court reasoned that the defendants' possession of marijuana required a jury trial because conviction would decrease their job employment opportunities in the future. *Id.* The court also noted that conviction would bar defendants by statute from professions as pharmacists and attorneys. *Id.* These were sufficiently "grave consequences" to warrant a jury trial.

In *Blanton,* however, the United States Supreme Court recognized that the judiciary is not in the best position to gauge the seriousness of other consequences: "the judiciary should not substitute its judgment as to seriousness for that of a legislature, which is 'far better equipped to perform the task, and [is] likewise more responsive to changes in attitude and more amenable to the recognition and misperception in this respect.'" 489 U.S. at ——, 109 S.Ct. at 1292, quoting *Landry v. Hoepfner,* 840 F.2d 1201, 1209 (5th Cir.1988) (cert. den. —— U.S. ——, 109 S.Ct. 1540, 103 L.Ed.2d 844 (1989).) Legislative enactments create a clear measure of the moral seriousness of a crime and the way in which society views it. Gauging the seriousness of a crime based upon how the judiciary perceives that society might perceive a crime leads to confusion and imprecision. For instance, in this case, defendant's crimes might conceivably be serious for a person who wants to drive a cab or a bus or be a deliveryman, but would not seriously affect the job opportunities of a teacher, doctor or lawyer. This test seemingly makes the right to a jury trial depend on one's profession. The better rule is to gauge the moral impact and the seriousness of a crime based upon the legislative response to it.

Even under the *Dean* test, defendant's crimes do not require a jury trial. In *Dean,* the defendants were charged with possession of marijuana, a crime that carries a heavier stigma than running a red light, driving in violation of a restricted license, or failing to show proof of financial responsibility.

The third prong of the test provides the right to a jury where the offenses were triable by a jury at common law. None of the crimes with which defendant was charged existed at common law. Defendant, therefore, fails to meet any criteria that would have created the right to a jury.

■ The second reason why defendant is not entitled to a jury trial is that he failed to timely request one. Arizona law requires a party to demand a jury at least five days before a trial commences; failure to do so waives that right. A.R.S. § 22–320(A). In the present case, he did not request a jury trial until he appealed to the superior court. Therefore, even if there was such a right to a jury, it was waived.

■ Defendant's second claim, that requiring proof of financial responsibility constitutes cruel and unusual punishment, is also without merit. The prohibition against cruel and unusual punishment applies only to criminal penalties. A fine for failing to show proof of financial responsibility is a civil sanction. A.R.S. § 28–1253(G).

320

Finally, the municipal court committed no error in sentencing defendant. The court could have fined defendant up to $250 for running a red light. A.R.S. § 28–1076(E). The maximum penalty for failing to show proof of insurance is a $250 fine and three-month license suspension for first time violators. A.R.S. § 28–1253(G). The maximum penalty for violating a restriction on a driver's license, a class 2 misdemeanor, is four months imprisonment under A.R.S. § 13–707(A)(2) and a $750 fine under A.R.S. § 13–802(B). The municipal court imposed a $408 sanction and suspended the defendant's driver's license for 90 days for the two civil violations and imposed a $40 fine for violating the glasses restriction. These sanctions are well within the prescribed legal limits. The municipal court had no obligation to sentence defendant to driver's education classes. We therefore find no constitutional error in sentencing.

Accordingly, defendant's convictions and sentences are affirmed.

FIDEL, P.J., and EUBANK, J., concur.