988 P.2d 157

**Deanna M. BAZZANELLA,**
**Petitioner/Appellant,**

v.

**TUCSON CITY COURT in and for the County of Pima, State of Arizona; The Honorable Susan Bacal, a Magistrate thereof, Respondents,**

and

**The State of Arizona, Real Party in Interest/Appellee.**

**No. 2 CA–CV 98–0235.**

Court of Appeals of Arizona, Division 2, Department B.

April 29, 1999.

Redesignated as Opinion June 17, 1999.

As Amended June 17, 1999.

Review Denied Sept. 21, 1999.*

* Chief Justice Zlaket and Justice Feldman voted to   grant the Petition for Review.

Charles P. Davies, Tucson Public Defender, By Reed Palmer, Tucson, Attorneys for Petitioner/Appellant.

Thomas J. Berning, Tucson City Attorney, By R. William Call and M.J. Raciti, Tucson, Attorneys for Real Party in Interest/Appellee.

## OPINION

ESPINOSA, Judge.

¶ 1 Appellant Deanna Bazzanella challenges the superior court's denial of her petition for special action relief in which she contested the magistrate's denial of her request for a jury trial on the charge of misdemeanor child abuse pending against her in Tucson City Court. On appeal, she contends the superior court erred in concluding she was not entitled to a jury trial, arguing that child abuse is a crime of moral turpitude and a conviction on that charge has "grave consequences." Although we find this a close question, we conclude that a jury trial is not required for this offense and affirm the superior court's denial of special action relief.

*Background and Standard of Review*

¶ 2 In October 1997, Bazzanella was cited for one count of misdemeanor child abuse. The Tucson City Court magistrate denied her motion for a jury trial and granted her request for a stay to enable her to seek special action relief. In her special action petition to the superior court, Bazzanella claimed a jury trial was required because child abuse involves moral turpitude and her conviction on that charge could jeopardize her employment and carry other collateral consequences. The superior court accepted jurisdiction, but denied relief, concluding that, under the test enunciated in *Rothweiler v. Superior Court*, 100 Ariz. 37, 410 P.2d 479 (1966), Bazzanella was not entitled to a jury trial because she was not exposed to a severe

penalty, the charge did not involve moral turpitude, and she would not have been entitled to a jury trial at common law. This appeal followed. Ariz. R.P. Spec. Actions 8(a), 17B A.R.S.

¶3 When a special action initiated in superior court is appealed to this court, we must conduct a bifurcated review to consider, first, the superior court's acceptance or refusal of jurisdiction and, second, its decision on the merits. *Bilagody v. Thorneycroft*, 125 Ariz. 88, 607 P.2d 965 (App.1979). The superior court accepted special action jurisdiction, and neither party contends that it abused its discretion in doing so. Indeed, a special action is appropriate on the question of the right to a jury trial. *Benitez v. Dunevant*, 194 Ariz. 224, 979 P.2d 1017 (App.1998). Consequently, we consider only the court's decision to deny relief. We do not review a trial court's decision to grant or deny special action relief de novo, that is, we do not determine whether we would have granted relief, but rather, whether the superior court abused its discretion in denying relief. *Hamilton v. Mesa Municipal Court*, 163 Ariz. 374, 788 P.2d 107 (App.1989).

### Discussion

¶4 Criminal defendants are guaranteed the right of trial by jury by article 2, §§ 23 and 24, of the Arizona Constitution. This right, however, applies only to serious offenses; it generally does not apply to petty offenses. See *State ex rel. Dean v. Dolny*, 161 Ariz. 297, 778 P.2d 1193 (1989); *Benitez*. In determining whether a crime may be tried without a jury, "the severity of the penalty inflictable, as well as the moral quality of the act and its relation to common law crimes, must be considered." *Rothweiler*, 100 Ariz. at 42, 410 P.2d at 483. Based on *Rothweiler*, Arizona courts have applied a three-prong test in determining whether a criminal defendant is entitled to a jury trial, examining whether the defendant is exposed to a severe

penalty, whether the act involved moral turpitude, and whether the crime has traditionally merited a jury trial under common law. See *State ex rel. Baumert v. Superior Court*, 127 Ariz. 152, 618 P.2d 1078 (1980); *Campbell v. Superior Court*, 186 Ariz. 526, 924 P.2d 1045 (App.1996); *State v. Miller*, 172 Ariz. 294, 836 P.2d 1004 (App.1992); *State v. Harrison*, 164 Ariz. 316, 792 P.2d 779 (App. 1990). If any one prong is met, that is sufficient to warrant a jury trial. *Harrison*.

¶5 Bazzanella does not contend that misdemeanor child abuse carries a severe penalty or is an offense that merited a jury trial at common law. Rather, she argues she is entitled to a jury trial because misdemeanor child abuse is a crime of "moral turpitude." We therefore limit our discussion to that issue. "The term 'moral turpitude' describes conduct that is 'depraved and inherently base' or refers to 'acts that adversely reflect on one's honesty, integrity, or personal values.'" *Frederickson v. Superior Court*, 187 Ariz. 273, 274, 928 P.2d 697, 698 (App. 1996), quoting *Mungarro v. Riley*, 170 Ariz. 589, 590, 826 P.2d 1215, 1216 (App.1991). In determining the type of conduct that might indicate a crime is one of moral turpitude, we look to "[l]egislative enactments [because they] create a clear measure of the moral seriousness of a crime and the way in which society views it." *Harrison*, 164 Ariz. at 319, 792 P.2d at 782.

¶6 Bazzanella was charged under A.R.S. § 13-3623(C). A person violates that statute if he or she causes a child to suffer physical injury or abuse, causes or permits a child's person or health to be injured, or causes or permits a child to be placed in a situation in which the child's person or health is endangered "[u]nder circumstances other than those likely to produce death or serious physical injury." Our legislature has determined that the offense may be designated a misdemeanor[1] when the person acts with no more than criminal negligence, which means

---

1. Section 13-702(G)(2), A.R.S., vests authority in the state to prosecute negligent child abuse as either a class six felony or a class one misdemeanor. At oral argument, Bazzanella expressed concern that the state may exercise its charging discretion to deny a defendant's right to

a jury trial. As Division One of this court noted, however, the state has broad discretion in determining what charges, if any, are to be filed and a defendant's right to a jury trial is triggered by "the possible maximum penalty authorized by the legislature for the crime charged by the pros-

with respect to a result or to a circumstance described by a statute defining an offense, that a person fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

A.R.S. § 13–105(9)(d). Contrary to Bazzanella's assertion, this offense does not reflect adversely upon her honesty, integrity, or personal values because it is simply a failure to perceive a risk and act reasonably under circumstances that will not result in serious physical injury to the child. Although we do not condone any form of child abuse, some acts that qualify as misdemeanor offenses "are simply thoughtless expediency." *Campbell*, 186 Ariz. at 528, 924 P.2d at 1047. Nor do such acts indicate a "readiness to do evil," because they do not "support an inference of a witness's readiness to lie." *Id.*[2]

▮ ¶ 7 Bazzanella further argues, however, that misdemeanor child abuse "should be considered a malum in se crime," which necessarily involves moral turpitude.[3] Although, as a general rule, crimes that are malum in se involve moral turpitude, *Tucson City Court v. Lee*, 16 Ariz.App. 449, 494 P.2d 54 (1972), that characterization is not dispositive. *Du Vall v. Board of Medical Examiners*, 49 Ariz. 329, 66 P.2d 1026 (1937). For example, although simple assault is a malum in se crime, *id.*, it does not involve moral turpitude. *Bruce v. State*, 126 Ariz. 271, 614 P.2d 813 (1980); *Goldman v. Kautz*, 111 Ariz. 431, 531 P.2d 1138 (1975). Indeed, in *State ex rel. McDougall v. Strohson*, 190 Ariz. 120, 945 P.2d 1251 (1997), the defendant was charged with misdemeanor assault upon a sixteen-year-old victim, which was designated a "domestic violence offense." Our supreme court noted that it had never extended jury status to misdemeanor assault cases, even where multiple counts could expose a defendant to more than six months incarceration, because such charges previously had been found to not involve moral turpitude. The court also observed that labeling the offense "domestic violence" did not change the underlying substance of the charge and the defendant was not, therefore, entitled to a jury trial on that basis. We likewise conclude the superior court did not err or abuse its discretion in ruling that Bazzanella was not entitled to a jury trial on the basis of moral turpitude.

▮ ¶ 8 Bazzanella additionally argues she is entitled to a jury trial because a misdemeanor child abuse conviction has "grave consequences." In *Dolny*, our supreme court held the moral quality prong of the *Rothweiler* test is not strictly limited to crimes that involve moral turpitude, stating:

> Certainly, being charged with a crime of moral turpitude warrants a jury trial. Damage to reputation, humiliation, and loss of dignity beyond that associated with all crimes brings moral turpitude crimes, by their very nature, into the realm of serious cases. However, being tried for a crime that does not fall within the definition of moral turpitude may also be serious enough to warrant a jury trial, chiefly because of the grave consequences resulting from conviction. Thus, we regard it as a mistake to read Rothweiler to hold that the moral quality prong only applies to moral turpitude crimes.

161 Ariz. at 300, 778 P.2d at 1196 (footnote omitted). Contrary to Bazzanella's assertion that *Dolny* added a fourth prong to the *Rothweiler* test, it appears to have merely expanded the moral turpitude prong. The

---

ecutor." *State v. Frey*, 141 Ariz. 321, 324, 686 P.2d 1291, 1294 (App.1984) (emphasis added); see also *Amancio v. Forster*, 292 Ariz. Adv. Rep. 28, —— Ariz. ——, 993 P.2d 1059, 1999 WL 177594 (Ct.App. April 1, 1999).

2. Although, as Bazzanella urges, misdemeanor child abuse may be well suited to a jury determination because reasonable people may disagree on what acts constitute appropriate discipline as opposed to child abuse, we are bound by the judicial precedents of our supreme court; moreover, the factual basis underlying the charge does not appear in the record on appeal.

3. A crime is malum in se if it requires proof of a culpable mental state, while one that is malum prohibitum is wrong simply because it is prohibited by law. *State v. Williams*, 144 Ariz. 487, 698 P.2d 732 (1985).

state urges us not to consider *Dolny*, claiming its holding is "an anomaly." We are, however, bound by the decisions of the supreme court and must apply the law it has declared. *State v. White*, 16 Ariz.App. 279, 492 P.2d 1217 (1972). Moreover, that court recently applied its "grave consequences" analysis in *Strohson*. As Division One of this court noted in *Benitez*, however, "*Dolny* requires that we give only secondary emphasis to the 'stigma' and 'moral quality' factors." , 194 Ariz. 224, ¶ 12, 979 P.2d 1017, ¶ 12.

¶ 9   Bazzanella claims that, if convicted, she could lose her job at a day care center. We find this argument compelling but ultimately unpersuasive. As the court noted in *Strohson*, jury trial eligibility has never been determined "based upon an analysis of the individual defendant before the court. If we were to do so now, we would have the anomalous situation where some persons would be entitled to a jury trial and others would not, although charged with exactly the same substantive Arizona crime." 190 Ariz. at 125, 945 P.2d at 1256. Moreover, contrary to Bazzanella's assertion, A.R.S. § 36–883.02(K) does not require revocation of her registration as a child care provider should she be convicted. It states that the Department of Health Services "may" revoke a person's registration "if that person is awaiting trial on or [is] convicted of" certain named offenses, including child abuse. § 36–883.02(G)(1)(r). Our supreme court rejected a similar argument in *Spitz v. Municipal Court*, 127 Ariz. 405, 621 P.2d 911 (1980). The defendant in that case had been charged with the misdemeanor offense of selling liquor to a minor and claimed he was entitled to a jury trial because a conviction could result in the suspension of his liquor license. The court stated, "[t]he fact that there might be an additional sanction . . . does not mandate a jury trial." *Id.* at 408, 621 P.2d at 914. Similarly, distinguishing *Dolny*, the *Strohson* court noted that a conviction for drug possession could potentially "prevent defendant from getting any job," while the defendant in that case, if convicted of domestic violence, would be prohibited from possessing a gun which would "only potentially affect employment opportunities in limited areas." 190 Ariz. at 122, 945

P.2d at 1253. The reasoning of both cases applies here.

¶ 10   In a similar vein, Bazzanella argues that a conviction could curtail her employment opportunities in Arizona school districts, A.R.S. § 15–512; limit her ability to adopt a child, A.R.S. § 8–105; endanger her continued custody of her children should a dispute arise, A.R.S. § 25–403; and constitute "sufficient grounds for placing her children in temporary custody of the state, or . . . terminating her parental rights altogether." A.R.S. §§ 8–303 and 8–533. These assertions are speculative and exaggerate the consequences of a misdemeanor child abuse conviction. Such a conviction does not provide the showing of imminent abuse required by § 8–303 for placing a child in the temporary custody of the state, is not a ground for terminating parental rights under § 8–533, is but one factor among nine listed in § 8–105(E) a court may consider in determining a person's fitness to adopt a child, and is not even mentioned in § 25–403. Moreover, § 15–512(C) is similar to § 36–883.02 in that it allows a school district to refuse to hire a person who has been convicted of child abuse, but does not require that employment be denied. Accordingly, we conclude the "grave consequences" which Bazzanella claims attach to a misdemeanor child abuse conviction are not so severe and universal as to warrant a jury trial. The superior court did not abuse its discretion in denying relief on her petition for special action.

¶ 11   Affirmed.

CONCURRING: JOSEPH W. HOWARD, Acting Presiding Judge, and M. JAN FLÓREZ, Judge.