135 P.3d 68

**Jeffrey ABUHL, Petitioner/Appellant,**

v.

**Honorable Lynda HOWELL, Phoenix City Court Judge, Respondent Judge/Appellee,**

and

**Phoenix City Prosecutor, Real Party in Interest/Appellee.**

**No. 1 CA–CV 05–0611.**

Court of Appeals of Arizona, Division 1, Department C.

May 30, 2006.

Jeffrey S. Abuhl, Petitioner/Appellant, Phoenix, In Propria Persona.

Kerry G. Wangberg, Phoenix City Prosecutor By Gary L. Shupe, Assistant City Prosecutor, Phoenix, Attorney for Real Party in Interest/Appellee.

**OPINION**

PORTLEY, Judge.

¶ 1 In this appeal we are asked to determine whether false reporting to a law enforcement agency is a jury-eligible offense. For the reasons that follow, we find that it is not.

**BACKGROUND**

¶ 2 Jeffrey S. Abuhl ("Abuhl") was charged with false reporting in violation of Arizona Revised Statutes ("A.R.S.") section 13–2907.01 (2001).[1] After a Phoenix City Court judge denied Abuhl's request for a jury trial, he filed a special action with the superior court.

¶ 3 The superior court accepted special action jurisdiction and denied relief. The court held that Abuhl is not entitled to a jury trial based on the test set forth in *Derendal v. Griffith*, 209 Ariz. 416, 104 P.3d 147 (2005). Abuhl now appeals that ruling and we have jurisdiction pursuant to A.R.S. §§ 12–120.21(A)(1) (2003) and 12–2101(B) (2003).

**DISCUSSION**

¶ 4 Jury eligibility is a question of law that we review de novo. *Urs v. Maricopa County Attorney's Office*, 201 Ariz. 71, 72, ¶ 2, 31 P.3d 845, 846 (App.2001).

¶ 5 Article 2, Section 23 of the Arizona Constitution states that "[t]he right of trial by jury shall remain inviolate." Our Supreme Court has "consistently held that the phrase 'shall remain inviolate' preserves the

---

1. A.R.S. § 13–2907.01:

A. It is unlawful for a person to knowingly make to a law enforcement agency of either this state or a political subdivision of this state a false, fraudulent or unfounded report or statement or to knowingly misrepresent a fact for the purpose of interfering with the orderly operation of a law enforcement agency or misleading a peace officer.

B. Violation of this section is a class 1 misdemeanor.

**514**

right to jury trial as it existed at the time Arizona adopted its constitution." *Derendal,* 209 Ariz. at 419, ¶ 9, 104 P.3d at 150. Additionally, the court has "held that the right . . . does not apply to petty offenses." *Rothweiler v. Superior Court of Pima County,* 100 Ariz. 37, 41, 410 P.2d 479, 482 (1966) (overruled in part by *Derendal,* 209 Ariz. 416, 104 P.3d 147).

¶ 6 The right to a jury trial in Arizona is not absolute, and in *Rothweiler* the court established a three-pronged test to determine whether the federal or Arizona Constitution guarantees a jury trial with regard to a particular criminal offense. *Id.* at 42, 410 P.2d at 483; *see also Derendal,* 209 Ariz. at 418, ¶ 5, 104 P.3d at 149. The three relevant factors, as set forth in *Rothweiler,* were: 1) the relationship of the offense to the common law;[2] 2) "the severity of the penalty inflictable";[3] 3) and the "moral quality of the act." 100 Ariz. at 42, 410 P.2d at 483. Each of the three prongs was "independently sufficient to give rise to a jury trial." *Harrison,* 164 Ariz. at 317, 792 P.2d at 780.

¶ 7 In *Mungarro v. Riley,* 170 Ariz. 589, 826 P.2d 1215 (App.1991), we applied the *Rothweiler* test and held that false reporting is a jury-eligible offense. We determined that the potential penalty for the violation of A.R.S. § 13–2907.01 is not serious[4] and that the crime of false reporting has no common law antecedent. *Id.* at 590, 826 P.2d at 1216. We then determined that a conviction for false reporting "would reflect adversely on Mungarro's moral character" and held that a jury trial was required under the moral quality prong of the *Rothweiler* test. *Id.*

¶ 8 In *Derendal* our supreme court removed the moral quality prong of the *Rothweiler* test. 209 Ariz. at 424, ¶¶ 31–32, 104 P.3d at 155. The court recognized that the moral quality prong had become subjective and ambiguous, resulting in inconsistent outcomes, and concluded that neither the Sixth Amendment to the United States Constitution nor the Arizona Constitution requires the application of a moral quality test. *Id.*

¶ 9 By removing the moral quality prong of the *Rothweiler* test, *Derendal* necessarily overruled our holding in *Mungarro* to the extent that it is inconsistent with *Derendal.*[5]

¶ 10 Abuhl acknowledges that the moral quality test has been removed from the jury eligibility analysis, and concedes that the potential penalty for false reporting is not severe. He argues only that false reporting was a statutory crime in existence at the time of statehood and that he is therefore entitled to a jury trial on the basis of common law antecedent.

¶ 11 There is a significant distinction between a common law offense and a statutory offense, both existing at the time of statehood. Statutory rights under the territorial penal code do not qualify as common law antecedents that would require a jury trial under *Derendal. See Newkirk v. Nothwehr,* 210 Ariz. 601, 604, ¶ 12, 115 P.3d 1264, 1267 (App.2005); *see also Phoenix City Prosecutor's Office v. Klausner,* 211 Ariz. 177, 180, ¶ 10, 118 P.3d 1141, 1144 (App.2005) ("[J]ury trial rights provided by the territorial penal code prior to statehood were not preserved by the Arizona Constitution."); *Ottaway v. Smith,* 210 Ariz. 490, 494 n. 6, ¶ 14, 113 P.3d

---

**2.** "To determine whether Article 2, Section 23 assures the right to trial by jury, we consider whether a modern crime has a common law antecedent. We regard a jury-eligible, common law offense as an antecedent of a modern statutory offense when the modern offense contains elements comparable to those found in the common law offense." *Derendal,* 209 Ariz. at 419, ¶ 10, 104 P.3d at 150.

**3.** A potential penalty is not considered serious if it entails six months in jail or less. *See State ex rel. Baumert v. Superior Court,* 127 Ariz. 152, 154, 618 P.2d 1078, 1080 (1980); *see also State v. Harrison,* 164 Ariz. 316, 318, 792 P.2d 779, 781 (App.1990). Additionally, we "make a case-

by-case evaluation of the seriousness of the risk and extent of the possible deprivation" arising from potential fines to determine if the fines make a penalty serious. *Baumert,* 127 Ariz. at 155, 618 P.2d at 1081.

**4.** The potential penalty for violation of A.R.S. § 13–2907.01 is a six-month jail term and a fine of up to $2500. *See* A.R.S. §§ 13–707(A)(1) (2001), –802(A) (2001).

**5.** The supreme court recognized *Mungarro* as one of only four cases in which the court of appeals has labeled a misdemeanor offense as a crime of moral turpitude. *Id.* at 424–25, ¶ 35, 104 P.3d at 155–56.

1247, 1251 n. 6 (App.2005) (finding that appellant's citation to a territorial statute in support of his claim that a jury trial was required was "inapposite" and failed to satisfy the common law *Derendal* prong, which "focuses on the right to trial for the offense at common law.").[6]

## CONCLUSION

¶ 12 We find that under the two-pronged *Derendal* test, false reporting in violation of A.R.S. § 13–2907.01 is not a jury-eligible offense. We therefore affirm the ruling of the superior court.

CONCURRING: SUSAN A. EHRLICH and PATRICIA K. NORRIS, Judges.

---

**6.** Abuhl argues that this court should construe the phrase "shall remain inviolate" to mean that all statutory crimes that were jury-eligible at statehood continue to be jury-eligible. Abuhl cites several cases from other states in support of his argument. Because the Arizona Supreme Court has decided this issue, we will not consider those cases cited by Abuhl. *See Francis v. Ariz. Dep't of Transp.*, 192 Ariz. 269, 271, ¶ 10, 963 P.2d 1092, 1094 (App.1998) ("Under the doctrine of stare decisis, once a point of law has been established, it must be followed by all courts of lower rank in subsequent cases where the same legal issue is raised.").

Additionally, Abuhl has not established that a statute existed at the time of statehood that contained elements comparable to those of A.R.S. § 13–2907.01. He merely states that "[t]he court ... acknowledged that there was a false reporting statute in existence at the time of statehood." The record does not support this statement.