NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

DOUGLAS D. YOKOIS,
*Petitioner/Appellant*,

*v.*

ARIZONA DEPARTMENT OF CORRECTIONS, et al.
*Respondents/Appellees*.

No. 1 CA-CV 17-0120
FILED 10-16-2018

---

Appeal from the Superior Court in Maricopa County
No. CV2016-008175
The Honorable Lori Horn Bustamante, Judge
The Honorable Teresa A. Sanders, Judge

**AFFIRMED**

---

COUNSEL

Douglas D. Yokois, Florence
*Petitioner/Appellant*

Arizona Attorney General's Office, Phoenix
By Jonathan H. Schwartz, Michael E. Gottfried
*Counsel for Respondent/Appellee Arizona Department of Corrections*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Randall M. Howe joined.

---

**C R U Z**, Judge:

¶1        Douglas D. Yokois, a prisoner in the Arizona Department of Corrections ("ADC") appeals a superior court order denying special action relief from a finding by ADC that he violated prison regulations and imposing discipline for the infraction.  Yokois contends the superior court abused its discretion by (1) disregarding ADC's purported violations of his right to due process at the disciplinary hearing; (2) holding him, a *pro se* litigant, to the same standards as ADC's attorneys in litigating the matter; and (3) ignoring ADC's alleged interference with his rightful access to the court.  For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY[1]**

¶2        On February 22, 2016, an ADC Correctional Officer ("CO") ordered Yokois to pack up his belongings for a move to another cell. Because Yokois did not pack quickly enough, some COs ushered him to his new cell while other COs remained behind to finish packing his things. Once at the new cell, Yokois remained outside while the COs brought in his belongings and dumped them onto the bed.

¶3        While unpacking Yokois' things, one of the COs discovered a weapon among Yokois' belongings — a 4" long and 1" wide piece of plastic sharpened to a point and attached to a small metal handle.  Prison authorities initiated disciplinary proceedings.  Three days later, CO Lopez delivered to Yokois an "Inmate Disciplinary Report" that stated he was charged with possession of a weapon.  Yokois signed the document, acknowledging that he was served notice of the charge and that he received a copy of the report.

---

[1]        We view the facts contained in the record before the ADC hearing officer and testimony of ADC officers in the light most favorable to upholding the superior court's ruling.  *See Hornbeck v. Lusk*, 217 Ariz. 581, 582, ¶ 2 (App. 2008).

¶4        At the hearing on the charged infraction, Yokois read from a prepared statement, but refused to provide the Disciplinary Hearing Officer, Captain Schitter, a copy of the statement after he asked for it.  The evidence consisted of Yokois' statement; three witness statements; reports by the COs involved in moving Yokois between cells and discovering the weapon; and reports generated as part of the disciplinary hearing process.  The three witness statements entered in evidence on Yokois' behalf were obtained by way of written answers to questionnaires submitted by Yokois to the witnesses via ADC staff.  Reviewing this evidence, Captain Schitter found it "more probably true than not" that Yokois was guilty of possessing a dangerous weapon.  At the conclusion of the hearing, Captain Schitter stated in writing (and later repeated in an affidavit) that he based his decision "on the Disciplinary Report, the Information Reports, the Investigative Reports and copies of physical evidence."  Yokois signed the form, received a copy, and was assessed 360 days of lost earned-release credit ("ERC"), along with additional punishment not relevant to this case.

¶5        After two unsuccessful administrative appeals, Yokois petitioned the superior court for special action relief.  The superior court accepted jurisdiction but, finding that Yokois was not denied due process throughout his administrative hearing and appeals, denied relief.  Yokois timely appealed to this court, then filed a motion in the superior court to vacate and set aside the special action judgment.  We granted Yokois' subsequent motion to suspend his appeal until the superior court ruled on his motion to vacate and set aside.  The superior court denied Yokois' motion.

¶6        In his appeal, Yokois claims the superior court's denial of his special action violates his due process rights.  We have jurisdiction pursuant to Arizona Revised Statutes sections 12-120.21(A)(1), and 12-2101(A)(1).

**DISCUSSION**

¶7        When the superior court accepts jurisdiction over a non-statutory special action and rules on the merits, as the court did here, we review for abuse of discretion. *Bazzanella v. Tucson City Court*, 195 Ariz. 372, 374, ¶ 3 (App. 1999) (citation omitted).  A court abuses its discretion where the record fails to provide substantial support for its decision or the court commits an error of law in reaching the decision. *Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 456 (1982); *see also Torres v. N. Am. Van Lines, Inc.*, 135 Ariz. 35, 40 (App. 1982) (discretion abused if "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons").

I.      Due Process During Yokois' ADC Disciplinary Hearing

¶8          After a state has granted ERC to an inmate, it may not rescind or withdraw the ERC without certain due process. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). Imprisonment does not strip an inmate of his rights under the Due Process Clause; however, an inmate's rights are "subject to restrictions imposed by the nature of the regime to which [prisoners] have been lawfully committed." *Id.* at 556. More specifically, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Id.*

¶9          Before a prisoner may be stripped of ERC as a disciplinary measure,[2] due process requires he receive: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563-67). This is known as the three-factor *Wolff* test.

¶10          Due process further requires that "some evidence" must support a finding of guilt in such a hearing. *Hill*, 472 U.S. at 455. This standard is met "if there was some evidence from which the conclusion of the administrative tribunal could be deduced." *Id.* (internal quotation and citation omitted). In ascertaining whether this standard was met, the court does not decide afresh the credibility of witnesses, weigh the evidence, or reexamine the full record—"the relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56 (emphasis added) (citations omitted).

¶11          Regarding the first *Wolff* factor, the record reflects that prison authorities gave Yokois a copy of his Inmate Disciplinary Report eighteen days before his hearing—well ahead of the constitutionally required twenty-four hours. Yokois argues he was not allowed to keep a copy of the form. CO Lopez gave a sworn statement to the contrary. In any event, the purpose of providing an inmate with a copy of the charges is "to inform him of the charges and to enable him to marshal the facts and prepare a

---

[2]          Yokois argues his disciplinary five-month assignment to Special Management Unit II also implicated the due process protections articulated in *Wolff*. 418 U.S. at 557. We agree. However, as discussed in the context of his deprivation of ERC claim, we conclude he was afforded those due process protections.

defense." *Wolff*, 418 U.S. at 564. The summary of the charge on the form Yokois signed was stated in just three sentences, only the first of which would be relevant to Yokois in preparing his defense. Yokois does not allege that any inability to retain a copy of the Inmate Disciplinary Report prejudiced him in any way. Yokois had eighteen days after being informed of the charge to prepare for the hearing, and within that time, he obtained three witness statements with responses to his written questions and drafted a five-page statement that he presented at his hearing. He does not allege that ADC failed to provide him notice of the charge against him, nor does he argue what he might have done differently in the preparation of his defense had the form not been taken from him. Accordingly, even if he was not allowed to keep a copy of the form, he has shown no prejudice. *See Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991) ("[I]t is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial.").

¶12        Next, Yokois was not denied due process during the hearing itself. Captain Schitter considered his three witness statements at his hearing, even though Yokois submitted them late. Similarly, Captain Schitter considered Yokois' own five-page statement even though Yokois refused to provide a copy for the hearing record. Yokois complains on appeal that he was unfairly deprived of the opportunity to call witnesses to testify in person on his behalf. ADC argues he waived any argument about live witnesses because he did not ask for any live witnesses to be called. Yokois argues in response that any request would have been futile, given ADC's blanket policy against allowing inmates to call live witnesses at disciplinary hearings. In *McCann v. Coughlin*, the Second Circuit held that due process may be improperly denied when an inmate fails to request live witnesses "on the basis of the overwhelming and uncontradicted evidence that prisoners at [the prison] had never been allowed to call witnesses." 698 F.2d 112, 123 (2d Cir. 1983).

¶13        We find *McCann* persuasive. Regardless, while Yokois argues that ADC maintains such a blanket policy, the record is devoid of evidence that ADC adheres to a policy against permitting live witness testimony in every case. In fact, the record suggests that the issue of live witness testimony was given particularized consideration, as due process requires. In her sworn statement, CO Lopez indicated Yokois presented security concerns, noting that "Yokois was in maximum custody at the time of [the] investigation," which meant "that he must be restrained at all the limited times when he would be removed from his cell." Even if concerns regarding his proximity or physical access to other inmate witnesses was

not provided contemporaneously with his hearing, "prison officials may choose to explain their decision at the hearing, or they may choose to explain it later." *Ponte v. Real*, 471 U.S. 491, 497 (1985) (internal quotations omitted). So long as the reasons provided relate logically to prison safety considerations and institutional goals, the due process concerns outlined in *Wolff* are satisfied. *See Ponte*, 471 U.S. at 497. We hold that reasonable justification was provided by ADC that relates logically to prison safety, and that Yokois' due process rights were not violated by the requirement that his witnesses provide hearing testimony in written form.

**¶14**        *Wolff*'s final prong requires the prison to give an inmate who is adjudicated guilty a written decision stating the evidence and reasoning on which the decision is based. At the conclusion of his hearing, Yokois received a copy of Captain Schitter's written ruling against him. Captain Schitter stated in affidavit, and the written ruling reflects, that in finding Yokois committed the infraction, he "relied on the Disciplinary Report, the Information Reports, the Investigative Reports and copies of physical evidence." This procedure satisfied *Wolff*'s third prong. In addition, we have reviewed this evidence, and find it sufficient to meet the requirement in *Hill* that "some evidence" support the conclusion that Yokois committed the infraction. *See* 472 U.S. at 455.

**¶15**        Because Yokois' hearing satisfied due process, the superior court did not abuse its discretion when it denied special action relief.

II.        The Standard to Which *Pro Se* Litigants Are Held

**¶16**        Yokois next argues the superior court improperly held him to the same standard as ADC attorneys in matters of court procedure and briefing requirements. Because "[w]e hold unrepresented litigants in Arizona to the same standards as attorneys," Yokois' argument must fail. *Flynn v. Campbell*, 243 Ariz. 76, 83, ¶ 24 (2017).

III.        Yokois' Access to the Courts

**¶17**        The record does not support Yokois' claims that ADC and/or the superior court committed fraud, forgery, perjury, and intentional delay as a means of interfering with his access to the courts. Although he claims opposing counsel and ADC attempted to thwart his efforts to pursue administrative and judicial review of the disciplinary proceedings, the record shows he received notice of the charge against him, obtained witness statements, was able to prepare filings with citations to legal authority, effected service upon pertinent parties, and argued on his own behalf.

**¶18** Moreover, despite any difficulties he may have encountered in the process, Yokois does not allege, let alone demonstrate, that he suffered any prejudice because of the conduct of opposing counsel or ADC. Since we "will uphold a denial of special action relief if our review reveals any valid reason for so doing," *Carrington v. Ariz. Corp. Comm'n*, 199 Ariz. 303, 305, ¶ 6 (App. 2000), and because our thorough review of the record reveals no error of law, *Files v. Bernal*, 200 Ariz. 64, 65, ¶ 2 (App. 2001), we conclude Yokois was not denied access to the courts.[3]

## CONCLUSION

**¶19** We affirm the superior court's order declining relief on Yokois' special action petition.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[3] To the extent Yokois appeals the superior court's denial of his Motion to Vacate and Set Aside Judgment, because he advances the same arguments for overturning the court's ruling on that motion as he did for overturning the court's judgment, we similarly affirm the order denying the motion.