[Criminal No. 780.   Filed January 16, 1933.]

[17 Pac. (2d) 1098.]

CHARLES W. HARRIS, Appellant, v. STATE, Respondent.

Mr. W. L. Barnum, Mr. Allan K. Perry and Mr. Frank J. Duffy, for Appellant.

Mr. K. Berry Peterson, Attorney General, Mr. J. R. McDougall, Assistant Attorney General, and Mr. Lloyd J. Andrews, County Attorney, for the State.

ROSS, C. J.—The appellant, Charles W. Harris, was convicted in the superior court of Maricopa county of the crime of presenting to the state auditor and securing from her the allowance of a false and fraudulent claim against the state for the sum of $533.23. He has appealed from the sentence of conviction and presents as errors certain rulings of the court in the course of the trial, the principal one being the refusal, on his motion, to direct a verdict at the close of the state's case on the ground that there was no evidence of criminal intent on his part. We will take up and consider this contention first, and to do so it is necessary that we make a statement of the salient facts as disclosed by the evidence.

There is very little, if any, material conflict in the evidence. The claim was dated August 7, 1930, and was on the state's general fund for military supplies supposed to have been sold to the state by the Army and Navy Store, of Phoenix, for the use of the Arizona militia. The defendant was a member of the Arizona militia and had been for a great number of years. For seventeen years he had been assistant adjutant-general or adjutant-general of the state. Early in 1929 he was succeeded in that office by Joseph F. Pomeroy. During his long service he was United States property and disbursing officer and

continued as such until December, 1929, when this duty was taken from him. He was not, in the year 1930, in any way connected with the adjutant-general's office, except, perhaps, as a civil employee, which will be later explained. Early in August, 1930, he made out, with the consent and approval of his successor, Pomeroy, the claim in question and caused the same to be presented to and allowed by the state auditor. The claim was not made in his name, but in the name of the "Army and Navy Store," the trade name of a store in Phoenix owned by one C. O. Long and managed by his brother, J. W. Long. This claim purported to be signed and sworn to by "J. W. Long, Manager" before one "Edw. J. McNamee, Capt. A. N. G., Quartermaster." On the claim was an assignment to said McNamee signed "Army and Navy Store By J. W. Long." In this form the claim reached Adjutant-General Pomeroy, who approved it and presented it to the state auditor for allowance stating that it was genuine. The auditor drew a warrant in payment thereof, payable to McNamee, and turned it over to Pomeroy, who in turn gave it to the defendant. Defendant then indorsed on it McNamee's name and also his own and negotiated it to the First National Bank of Arizona, at Phoenix.

J. W. Long and C. O. Long both testified that they had not sold to the state, or any of its agents, the goods and merchandise listed in the claim; that they had not seen the claim; that they had not signed it or sworn to it, and had had nothing whatever to do with it. McNamee admitted his part in the transaction and said he did it at the request of the defendant. The defendant, as a witness in his own behalf, admitted that the demand was false, but claimed that he did certain work in 1930, at the request of the adjutant-general, Pomeroy, in drawing plans for buildings for a national guard camp, to be

located and constructed near Flagstaff, Arizona, and that the scheme or plan of presenting a false claim was adopted by him and the adjutant-general to secure payment for such services; that such scheme or plan was resorted to because the then Governor and the legislative examiner had both told Pomeroy that they would not approve a claim against the adjutant-general's operating expense account for such services, and because, if he were paid out of such fund, Lescher and Mahoney, architects, would want to be paid out of the fund, instead of waiting "a deficiency bill for the work they done." Lescher and Mahoney were later given $1,866.09 by the legislature "for services rendered and moneys expended on behalf of the state as architects in connection with the building of the national guard camp near Flagstaff." Chapter 83, Laws 1931.

Defendant also justifies or excuses the method adopted to get the money from the state in this way: He claims that when, as property and disbursing officer of the United States, he was succeeded, he turned over to his successor an "excess" of goods, worth $1,870.98, and that he was getting back only $533.23 for it. The items charged in his false claim purported to be and to represent this "excess," which he says he gave to the state.

We think we have stated enough of the evidence to give a fair picture of the transaction and the part played in it by the defendant—not as vivid and colorful as the record shows it, but merely the ugly slimy outlines.

In view of defendant's contention that no specific felonious intent was shown, we cite just one piece of evidence, a note written and mailed to McNamee by defendant. It was written from the adjutant-general's office and reads:

"Dear Mickey: You don't know it but you signed that warrant when it came down. I had to have the money so I signed your name and if any one asks you why you signed it yourself. Be good and you'll be lonesome.

"CHAS."

This note and the whole record show beyond cavil or doubt that defendant did not propose to be "lonesome."

The information charges the defendant with the offense denounced in section 4519, Revised Code of 1928, reading as follows:

"Every person who, with intent to defraud, presents for allowance or for payment, to any public board or officer, authorized to allow or pay the same, if genuine, any false or fraudulent claim, bill, account, voucher, or writing, is guilty of a felony."

Whether the defendant, in fabricating and presenting the false claim to the state auditor for allowance, intended to defraud the state, was a question of fact peculiarly within the province of the jury to decide, and, in view of all the circumstances, we cannot see how an honest, conscientious jury could have decided that his intent was innocent. The scheme adopted to obtain this money from the state involved a conspiracy, in the carrying out of which it was necessary to commit forgery, perjury, and the offense charged in the information—all crimes involving moral turpitude, but easily overcome by defendant.

We do not think there is either a legal or moral basis for his collecting this money from the state because he turned over to his successor, as he says, some $1,800 worth of "excess" goods. We cannot understand how such "excess" could ever have become his property. The statute, section 2203, Revised Code 1928, provides that "he [adjutant general] shall be responsible for the care, preservation,

and repair of all military property belonging or issued to the state for the arming and equipping of the militia, and shall dispose of all military property found unserviceable, account for the proceeds thereof, and deposit the same in the state treasury.''

His claim for services in preparing plans for a national guard camp at Flagstaff is equally as baseless. Licensed architects were employed and paid to perform the services for which he charges. Chapter 83, Laws 1931. We have not been cited to any law authorizing the adjutant-general to enter into such a contract as defendant claims was made with him. There is no provision in the state Military Code (chapter 50, Rev. Code 1928, as amended) giving the adjutant-general such power.

Notwithstanding these claims of defendant were without any foundation either in law or in good morals, the court permitted them to be offered to the jury for what they were worth to the defendant.

The defendant complains of the court's refusal to permit him to show that he had on ''a number of occasions before'' indorsed McNamee's name on warrants, and that it was the custom for each to indorse the other's name on warrants. Granting that these two persons trusted and confided in each other as suggested, we cannot see its materiality. It might have facilitated the fraud perpetrated, but would not in the least show that the ultimate purpose in this case was innocent.

The court instructed the jury, in substance, that, even though Pomeroy, the adjutant-general, employed the defendant to do work in connection with the national guard camp at Flagstaff, and that he did such work, he had no right to payment therefor out of the general funds of the state on the claim presented, and that his claim on such fund was a false claim, made with the intent to defraud the state of Arizona,

and that he should be found guilty as charged. This instruction it is claimed is erroneous because it is not based on "the facts in the case" and "instructs the jury to find an intent to defraud upon facts which were not in evidence." Whatever may be said of this instruction in other respects, we do not think it amenable to the criticisms made. If the case were a close one, it might be said the court erred in assuming intent from the facts stated; but no complaint is made of that, and, even if there were, we do not think, under the facts, the defendant was prejudiced thereby.

Defendant complains of the court's order refusing his motion for a new trial. The basis of this motion is that salaries, wages, labor and travel expenses of the military department of the state during the year 1930 had been paid out of the operation fund of the national guard, whereas witness Harry Hegele, deputy state auditor, had testified to the contrary. It is sufficient to say that, if defendant had a legitimate or just claim against the operation fund of the national guard, he did not present it, and it is immaterial whether other claims were paid out of that fund during 1930, or whether there was a balance therein to apply to defendant's claim, if legitimate and properly presented.

There are some other assignments, but we do not consider them separately, because they are either clearly without merit or have been disposed of by what we have heretofore said.

The judgment is affirmed.

LOCKWOOD and McALISTER, JJ., concur.