7 P.3d 99

Daniel Paul BENITEZ, Petitioner,

v.

The Honorable Thomas DUNEVANT III, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,

The Phoenix City Prosecutor's Office, Real Party in Interest.

No. CV–98–0540–PR.

Supreme Court of Arizona, En Banc.

July 31, 2000.

Neal W. Bassett and Mariscal Weeks McIntyre Friedlander PA by Dominica Minore Bassett, Phoenix, Attorneys for Petitioner.

Roderick G. McDougall, Phoenix City Attorney by Gregory L. Hanchett, F. Tyler Rich, Assistant City Prosecutors, Phoenix, Attorneys for Real Party in Interest.

## O P I N I O N

JONES, Vice Chief Justice:

### Facts and Procedural History

¶ 1    Daniel Paul Benitez was charged, *inter alia*, with violating Arizona Revised Statutes Annotated (A.R.S.) section 28–3473(B) (1998) [1]—driving a motor vehicle on a license suspended for an earlier DUI violation. He was tried in Phoenix City Court without a jury and found guilty of the violation, a class one misdemeanor. Pursuant to relevant sentencing statutes, the maximum sentence available was six months' incarceration, *see* A.R.S. § 13–707(A)(1) (1989), and a fine of $2500, *see* A.R.S. § 13–802(A) (1989). Additionally, under A.R.S. § 28–3473(D)(1), upon

conviction, a driver's license suspension for an "additional like period" was mandatory. Benitez' actual sentence was 48 hours in jail, a $1010 fine, and a 90–day suspension of his driver's license, tacked on to his initial DUI suspension.

¶ 2    Benitez appealed to the Maricopa County Superior Court, asserting a right to jury trial. The superior court ruled the offense ineligible for trial by jury and held that even had the offense been found eligible, Benitez waived the issue as untimely raised. Benitez then brought a special action in the court of appeals, again arguing that the offense was jury eligible and that it had not been waived in city court. The court of appeals reversed the superior court, ruling the offense jury eligible, and remanded to the city court for a decision on waiver. The State now petitions this Court for review of the jury question. We granted review and have jurisdiction pursuant to article VI, section 5(3) of the Arizona Constitution, Rule 23 of the Arizona Rules of Civil Appellate Procedure, and A.R.S. section 12–120.24.

¶ 3    We hold that a trial on the charge of violating section 28–3473(B) (driving on a DUI suspended driver's license) is not jury eligible. Accordingly, we vacate the court of appeals' decision, affirm the decision of the superior court, and reinstate Benitez' conviction and sentence in the Phoenix city court. Applying the *Rothweiler/Dolny* test for jury eligibility, the offense is not linked to a crime associated with a common law right to jury trial, is not a crime evidencing serious moral deficiency, nor is it one which carries such severe penalties as would compel a jury trial. *State ex rel. Dean v. Dolny*, 161 Ariz. 297, 778 P.2d 1193 (1989); *Rothweiler v. Superior Court*, 100 Ariz. 37, 410 P.2d 479 (1966).

### Discussion

### I.    The Rothweiler/Dolny Test

■  ¶ 4    The test for jury eligibility in this state requires an inquiry into the seriousness of the offense. "Serious" offenses have been found jury eligible while "petty"

---

1. "A person who drives a motor vehicle on a public highway when the person's privilege to drive a motor vehicle is restricted, suspended, revoked, disqualified, canceled or refused for a violation of § 28–1381 [the DUI statute] ... is guilty of a class 1 misdemeanor ...."

offenses have been found ineligible. *See, e.g., Dolny,* 161 Ariz. at 299, 778 P.2d at 1195. This dichotomy is rooted in the Arizona Constitution. Article II, sections 23 and 24, guarantee jury rights to all criminal defendants, stating respectively, "[t]he right of trial by jury shall remain inviolate" and "[i]n criminal prosecutions, the accused shall have the right ... to have a speedy public trial by an impartial jury ...." Ariz. Const. art. II, §§ 23–24. The constitutional guarantee of trial by jury is not a *grant,* but a *reservation* of a pre-statehood right. *See, e.g., United States Fidelity & Guar. Co. v. State,* 65 Ariz. 212, 217, 177 P.2d 823, 826 (1947); *In re Davis,* 28 Ariz. 312, 313, 236 P. 715, 716 (1925). Thus, those offenses linked to jury trial at common law at the time the constitution was adopted are protected by the constitutional guarantee. It is because petty offenses were not triable to a jury at common law that we continue to distinguish between petty and serious offenses in the determination of jury eligibility.

¶5  In pre-*Rothweiler* jury eligibility cases, we focused primarily on the common law right, rather than on the "seriousness" of the offense. *See State v. Cousins,* 97 Ariz. 105, 107–08, 397 P.2d 217, 218 (1964); *Davis,* 28 Ariz. at 313, 236 P. at 716; *Bowden v. Nugent,* 26 Ariz. 485, 486–87, 226 P. 549, 549–50 (1924). But in *Rothweiler,* recognizing that some offenses, non-existent at common law, are nonetheless comparable in both severity and consequence to jury eligible crimes, we formulated a three-part test to establish a more flexible inquiry into the question of eligibility. 100 Ariz. at 42, 410 P.2d at 483. The test determines which offenses approximate the penalties, the consequences, and the stigmas that would have secured a jury right at common law. We have used the term "petty" to refer to non-eligible crimes. The term may cause confusion, however, due to the inconsistency between judicial use of the term and the legislative classification of offenses as "petty," "misdemeanor," or "felony." *See* A.R.S. §§ 13–105 (Supp.1999), –701 (Supp.1999), –707, and –803 (1989). Although we accord deference to legislative designations in determining the seriousness of an offense, *see, e.g., Dolny,* 161 Ariz. at 299–300, 778 P.2d at 1195–96, the courts alone are vested with constitutional authority to determine jury eligibility.

¶6  Thus, we do not attach a jury right to a felony, merely because the legislature has classified it as such, but rather, because, applying our own test, the right attaches to an offense that is sufficiently serious or would have been protected at common law. Similarly, we do not decline to find jury eligibility for a misdemeanor simply because it has been legislatively classified a misdemeanor. Rather, we look to the consequences of a conviction including the penalties and their impact, as well as the public condemnation of the act, to determine whether any given offense warrants a constitutionally protected jury right.

¶7  The three factors formulated in *Rothweiler* to determine jury eligibility are: (a) the relationship of the offense to common law crimes; (b) the severity of the potential penalties made available by statute; and (c) the moral quality of the offense. *See Rothweiler,* 100 Ariz. at 47, 410 P.2d at 486.

¶8  The application of these factors does not follow a set formula. However, we held in *State ex rel. McDougall v. Strohson* that the second factor, the severity of the maximum potential penalty authorized by the statute, is the most significant. 190 Ariz. 120, 124, 945 P.2d 1251, 1255 (1997); *see also Bruce v. State,* 126 Ariz. 271, 272–73, 614 P.2d 813, 814–15 (1980). As such, once that factor is established, the right to trial by jury is conclusive.

¶9  Moreover, if an offense is traceable to jury eligibility at common law, then the jury right is also firmly established even in the absence of the other two factors. The final factor—moral quality—is more flexible and thus requires careful analysis in its application. However, even in the absence of the other factors, a jury right is present for crimes involving moral turpitude or for crimes with potential for such grave consequences that they are considered serious in the eyes of society.

¶ 10  *Rothweiler* and *Dolny* adhere to our flexible approach allowing jury protection of crimes associated with penalties, stigmas, or consequences which, in relative terms, were the equivalent of jury eligible crimes acknowledged prior to adoption of the state constitution in 1912. Conversely, the state urges us to adopt the more rigid federal test making eligibility a function of legislative, rather than judicial, determination. In the federal sector, any offense with a potential jail term of six months or less is presumed petty, thus ineligible, unless the defendant can demonstrate additional statutory penalties that, when combined with incarceration, are so severe that they reflect a legislative determination that the offense is serious. *See Blanton v. City of North Las Vegas*, 489 U.S. 538, 542–43, 109 S.Ct. 1289, 1292–93, 103 L.Ed.2d 550 (1989). In contrast, we explained recently in *Strohson* that Arizona operates with a broader jury eligibility standard, providing its citizens with greater access to jury trials than the federal constitution mandates. 190 Ariz. at 121–22, 945 P.2d at 1252–53. For the reasons stated in *Strohson*, we again reject the narrow federal test and reaffirm Arizona's *Rothweiler/Dolny* test. As a matter of prudence, we will defer, where appropriate, to legislative standards of severity of an offense but reserve the ultimate determination of jury eligibility exclusively to the courts.

## II.  Applying the *Rothweiler* Test

■■■ ¶ 11  Jury eligibility focuses on the offense, not the defendant. *See Strohson*, 190 Ariz. at 125, 945 P.2d at 1256. On the record before us, we look to our *Rothweiler* decision for the application of the three-part test.

### A.  Relationship to Common Law Offenses

¶ 12  Benitez does not argue that driving on a DUI suspended license is comparable to crimes triable to a jury at common law. Clearly, the offense has no common law ante-

cedent and is therefore not jury eligible as a common law criminal offense.

### B.  Severity of Penalty

■■■ ¶ 13  In accordance with *Strohson*, we assess severity of the penalty by looking to the potential jail time and fines set by the legislature. 190 Ariz. at 124, 945 P.2d at 1255. Because the offense, driving on a suspended driver's license, is designated a class one misdemeanor, we refer to the maximum imprisonment for a class one misdemeanor, six months, *see* A.R.S. § 13–707, and the maximum fine, $2500, *see* A.R.S. § 13–802(A).[2] Whether a defendant in fact receives the maximum sentences is immaterial; we look to *potential* penalties. As a general rule, the penalties attendant to misdemeanor offenses in this state are, of themselves, not enough to secure a jury trial. *See State ex rel. Baumert v. Superior Court*, 127 Ariz. 152, 155, 618 P.2d 1078, 1081 (1980) (maximum six-month sentence and $1000 fine in 1980 did not establish severe penalty for disorderly conduct); *Spitz v. Municipal Court of Phoenix*, 127 Ariz. 405, 408, 621 P.2d 911, 914 (1980) (liquor license suspension for selling liquor to minor not jury eligible where the penalty was less than six months and the maximum fine was $300 in 1980); *O'Neill v. Mangum*, 103 Ariz. 484, 485, 445 P.2d 843, 844 (1968) (maximum penalty of six months and $300 fine for drunk and disorderly conduct in 1968 insufficient for jury eligibility); *see also Mungarro v. Riley*, 170 Ariz. 589, 590, 826 P.2d 1215, 1216 (App.1991) (possible six-month prison sentence and $2500 fine did not make false reporting to a law officer jury eligible, though moral turpitude inherent in the offense justified jury trial). On the record before us, applying our own precedent, the penalties imposed on Benitez are insufficient to warrant trial by jury. The maximum fine and incarceration in a case of this nature simply do not rise to that level.

---

2.  We treat the consequences of the driver's license suspension under the moral quality factor, not the severity of penalty factor. We did the same in *Dolny*, declaring that *Rothweiler*'s discussion of the implications of a driver's license suspension stemming from a DUI conviction should be treated as a moral quality factor. *Dolny*, 161 Ariz. at 300, 778 P.2d at 1196.

## C. Moral Quality

¶14 Moral quality as an element of the test is satisfied where the offense either involves moral turpitude or causes such an impact on the defendant's life or liberty as to constitute sufficiently grave consequences as a matter of law.

### 1. Moral Turpitude

¶15 Acts of "moral turpitude" constitute behavior which is "depraved and inherently base," *O'Neill,* 103 Ariz. at 485, 445 P.2d at 844, or actions which "adversely reflect on one's honesty, integrity, or personal values." *Dolny,* 161 Ariz. at 300 n. 3, 778 P.2d at 1196 n. 3. Crimes of moral turpitude are necessarily jury eligible because the "[d]amage to reputation, humiliation, and loss of dignity beyond that associated with all crimes brings moral turpitude crimes ... into the realm of serious cases." *Id.* at 300, 778 P.2d at 1196.

¶16 Such crimes include indecent exposure, *see City Court of Tucson v. Lee,* 16 Ariz.App. 449, 494 P.2d 54 (1972), solicitation of prostitution, *see In re Koch,* 181 Ariz. 352, 890 P.2d 1137 (1995), perjury, *see Harris v. State,* 41 Ariz. 311, 17 P.2d 1098 (1933), forgery, *see id.,* fraud, *see In re Wines,* 135 Ariz. 203, 660 P.2d 454 (1983), and misappropriation of funds, *see In re Couser,* 122 Ariz. 500, 596 P.2d 26 (1979).

¶17 To recognize a right to jury verdict on such crimes is logically consistent with a moral misconduct label. A jury must reflect societal morality. The offense at bar, substantially less serious, does not offend societal morality in the manner of perjury, prostitution, fraud, or forgery.

¶18 Benitez nevertheless frames his offense as one of moral turpitude, arguing that someone who "has been convicted of driving while intoxicated, and while under a suspension for that conduct, intentionally ignores the law and continues to drive" invites moral condemnation. In support, he cites *Frederickson v. Superior Court,* 187 Ariz. 273, 928 P.2d 697 (App.1996). But *Frederickson* stands for the proposition that fleeing the scene of an accident is an offense of moral turpitude. *Id.* at 274, 928 P.2d at 698.

Benitez claims his violation involves at least an equivalent moral infraction. We think he mischaracterizes Frederickson's act. Leaving the scene of an accident is a serious offense which places injured victims in jeopardy of further harm and evidences an intent to hide and evade the consequences of one's act. *Frederickson* found moral turpitude, not in the accident, but in the dishonesty which followed—his attempt to conceal identity and flee prosecution, neither of which is present here. *See People v. Bautista,* 217 Cal.App.3d 1, 265 Cal.Rptr. 661, 664–65 (1990); *State v. Horton,* 271 S.C. 413, 248 S.E.2d 263, 263–64 (1978).

¶19 Benitez' offense, in one sense, does question his honesty because he did something he was expressly required by law not to do. But this is true of virtually all criminal offenses, serious or minor. Accordingly, offenses similar in quality to driving on a suspended license have been found lacking moral turpitude. Such offenses include reckless driving, *see State ex rel. Dean v. City Court of Tucson,* 141 Ariz. 361, 687 P.2d 369 (App.1984), selling liquor to a minor, *see Spitz,* 127 Ariz. 405, 621 P.2d 911, operating without a contractor's license, *see State v. Miller,* 172 Ariz. 294, 836 P.2d 1004 (App. 1992), simple assault, *see Goldman v. Kautz,* 111 Ariz. 431, 531 P.2d 1138 (1975), simple assault designated as domestic violence, *see Strohson,* 190 Ariz. at 120, 945 P.2d at 1251, and disorderly conduct, *see Baumert,* 127 Ariz. 152, 618 P.2d 1078; *O'Neill,* 103 Ariz. 484, 445 P.2d 843. It may be said that each crime enumerated implicates the offender's personal values, but not necessarily his moral deficiencies. Moral turpitude is implicated when behavior is morally repugnant to society. It is not implicated when the offense merely involves poor judgment, lack of self-control, or disrespect for the law involving less serious crimes.

¶20 Even though driving on a suspended license for DUI does not reach the level of moral deficiency required for jury trial, the court of appeals reasoned that because DUI is jury eligible, other DUI-based offenses should also be eligible. But moral turpitude, inherent in DUI, is absent from the offense before us. The moral quality of Benitez'

**96**

original drunk-driving conviction does not extend to a subsequent violation of the license suspension penalty. An offense meets or fails the requirements of jury eligibility on its own, not because of its association with another offense.

## 2. Grave Consequences

¶ 21 An offense not of moral turpitude may nevertheless be jury eligible, as explained in *Dolny,* depending on the severity of the consequences to the defendant's life. Benitez argues that driving on a DUI suspended license involves such grave consequences that a jury right must attach. Relying on *Rothweiler,* he repeats the contention that if simple DUI is jury eligible, then driving on a DUI suspended license which carries the same prison potential and fine, as well as a potentially *longer* license suspension, must certainly be jury eligible. He claims his potential license suspension carried a maximum of one year, or, four times the length of the 90–day suspension possible in *Rothweiler.*

¶ 22 The statute contradicts this argument. A violation of the suspended license statute requires a suspension for an "additional like period," A.R.S. § 28–3473(D)(1), and thus could never result in a longer period of suspension. Nonetheless, though the license suspension faced by a defendant under section 28–3473(D)(1) may be the same length as that faced by Rothweiler, there are clear differences between the factors that make DUI jury eligible and a DUI suspended license violation ineligible.

¶ 23 In *Rothweiler,* we were concerned not just with the consequences of the license suspension, but with the moral implications of driving under the influence. Simply put, driving sober on a DUI suspended license does not reach the moral repugnancy nor deserve the consequences of a conviction for driving a vehicle while actually under the influence of alcohol.

¶ 24 The Supreme Court of Hawaii reached the same conclusion in *State v. Wilson,* 75 Haw. 68, 856 P.2d 1240 (1993). Hawaii's distinction between a DUI charge and a DUI suspended license violation is instructive. Though the jail term and fine available in Hawaii for a DUI suspended license conviction are less than those available under the Arizona statute, the potential license suspension period is the same. Confronted with Hawaii precedent holding DUI jury eligible, *see State v. O'Brien,* 68 Haw. 38, 704 P.2d 883 (1985), the Hawaii Supreme Court determined that driving on a DUI suspended license differed from the "grave and therefore constitutionally serious offense" of drunk driving. *Wilson,* 856 P.2d at 1244 (quoting *O'Brien,* 704 P.2d at 887). The court did not "condone the actions of DUI-license suspension violators who refuse to abide by their punishment, [but could not] say that their continued driving is, in and of itself, as serious and tragic a problem as those who drive or continue to drive while under the influence of intoxicating liquor." *Wilson,* 856 P.2d at 1244. The court applied its *O'Brien* test and held that the offense did not warrant trial by jury. For the same reasons, we reach a similar conclusion.

¶ 25 Benitez further argues grave consequences by reason of the impact on his employment. He claims the loss of one's ability to drive would impact employment by denying transportation to and from work. Though an understandable argument, it leads nowhere because it renders the reason for the suspension immaterial. It would apply to any license suspension, whether the result of a DUI conviction or of any other vehicular offense.

¶ 26 This court does not recognize driving as a right. Instead we view it as a privilege. *See State v. Harrison,* 164 Ariz. 316, 318, 792 P.2d 779, 781 (App.1990) ("The loss of a privilege is not nearly so serious or burdensome as the loss of a recognized right"). We recognize that license suspension limits the job functions of those who must drive for a living, but we cannot base our analysis of jury eligibility on the effects of a conviction upon a particular occupation or field. Jury eligibility is determinable on the basis of the offense, not the defendant. When faced with consequences to the employment function, the courts must decide whether the effects are sufficiently widespread to create a grave offense with a jury

right. Because we do not view the potential loss of the driving privilege as a grave or serious consequence, we hold today that the inability to get to and from work created by the suspension of one's license does not support a right to trial by jury.

### III. Waiver

¶ 27 Because we conclude the offense of driving with a license suspended under section 28–1381 is not jury eligible, the question whether the defendant waived the right is moot.

### Conclusion

¶ 28 The right to determine jury eligibility is vested in the courts of Arizona and continues to be based on the common law, the severity of the legislative penalty, and the moral quality of the crime in question.

¶ 29 Applying this test to the violation of section 28–3473(B) (driving on a license suspended for violation of the DUI statute), we hold that the offense is not linked to any which would have been jury eligible at common law, that penalties available for the offense do not rise to the level of seriousness as would mandate a jury trial, and that the offense does not implicate the moral element because it is neither a crime of moral turpitude nor a crime which may result in grave consequences.

¶ 30 The court of appeals' opinion is vacated, the decision of the superior court is affirmed, and the conviction and sentence imposed by the Phoenix Municipal Court are reinstated.

CONCURRING: THOMAS A. ZLAKET, Chief Justice, and STANLEY G. FELDMAN, Justice.

MARTONE, Justice, concurring in the judgment, dissenting from the opinion.

¶ 31 I agree that Benitez is not entitled to a jury trial for this misdemeanor, but not for the reasons stated by the majority. In *State ex rel. McDougall v. Strohson*, 190 Ariz. 120, 127, 945 P.2d, 1251, 1258 (1997) (Martone, J. concurring in the judgment), I stated at length my view that the time had come for us to abandon the subjective *Roth-*

*weiler/Dolny* three-part test. I there argued that we should adopt the clear and distinct approach established in *Blanton v. City of North Las Vegas,* 489 U.S. 538, 542, 109 S.Ct. 1289, 1293, 103 L.Ed.2d 550 (1989). The federal *Blanton* test can be rationally applied. One only looks to penalty and if the term is six months or less, there is no right to jury trial unless there are additional severe statutory penalties.

¶ 32 In contrast, the standard articulated in *Rothweiler v. Superior Court,* 100 Ariz. 37, 410 P.2d 479 (1966), and expanded by *State ex rel. Dean v. Dolny,* 161 Ariz. 297, 778 P.2d 1193 (1989) is subjective and impossible to apply on a consistent basis. The "moral quality of the act" component of the *Rothweiler/Dolny* test, which requires judges to predict the moral culpability the public attaches to an act, guarantees that its application will have irrational results. Because the "moral quality of the act" is in the eye of the beholder, there will be as many diverse results as there are judges.

¶ 33 This means that the defendant, counsel, and the court will never know for sure at the beginning of trial whether a jury must be convened. And the inconsistency does not stop there. Each member of this court wears a different lens. Compare, for example, *Rothweiler,* in which this court held that the charge of driving under the influence entitles one to a jury trial, with *Strohson,* in which this court held that a charge of domestic violence assault does not entitle one to a jury trial. Who is to say that domestic violence is less morally culpable than driving under the influence? The people, through their elected representatives, should decide such questions. That is why we leave gradations of criminal conduct, moral judgments, and sanctions to the legislature. When judges assume this role, as the majority does here, *see ante,* at ¶ 23 ("driving sober on a DUI suspended license does not reach the moral repugnancy nor deserve the consequences of a conviction for driving a vehicle while actually under the influence of alcohol"), the results will always be unpredictable.

¶ 34 Today's decision is a prime example of that. The court rejects *Blanton,* and then, after a detailed analysis of the *Rothweiler* test, ultimately concludes that no jury trial is

required. And yet, if you look at the opinion of the court of appeals, 194 Ariz. 224, 979 P.2d 1017, applying the same *Rothweiler* test, you will see a plausible approach that reaches the exact opposite conclusion. Then turn to the dissent in the court of appeals, 194 Ariz. at 229, 979 P.2d at 1022, to see yet another approach under *Rothweiler.* The result is that until there is an ultimate determination by a majority of this court, one can never know whether one is entitled to a jury. The patchwork quilt we create defies reasoned analysis.

¶ 35   I would, therefore, for the reasons stated at greater length in my concurring opinion in *Strohson,* inter the *Rothweiler /Dolny* three factor test and adopt the *Blanton* test as our own. Under that test, Benitez is not entitled to a trial by jury because the maximum period of incarceration for his offense cannot exceed six months, and there are no "additional statutory penalties" that are "so severe" that they clearly reflect a legislative determination that the offense in question is a 'serious one'." *Blanton,* 489 U.S. at 543, 109 S.Ct. at 1293.

CONCURRING: RUTH V. McGREGOR, Justice.