**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ARMANDO MARMOLEJO-CAMPOS, aka
Campos Ramos Armando,
                    *Petitioner,*

            v.

ALBERTO R. GONZALES, Attorney
General,

                    *Respondent.*

No. 04-76644

Agency No.
A71-616-204

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 20, 2007—San Francisco, California

Filed September 12, 2007

Before: Dorothy W. Nelson and Consuelo M. Callahan,
Circuit Judges, and Cormac J. Carney,* District Judge.

Opinion by Judge Callahan;
Dissent by Judge D.W. Nelson

---

*The Honorable Cormac J. Carney, United States District Judge for the Central District of California, sitting by designation.

**COUNSEL**

Christopher J. Stender, Stender & Pope, P.C., Phoenix, Arizona, for petitioner Armando Marmolejo-Campos.

Arthur L. Rabin (argued), Edward C. Durant, Peter D. Keisler, Linda Wendtland, Office of Immigration Litigation, U.S. Department of Justice, Washington, DC, for respondent Alberto R. Gonzales.

**OPINION**

CALLAHAN, Circuit Judge:

Petitioner Armando Marmolejo-Campos ("Campos"), a native and citizen of Mexico, petitions for review of the Board of Immigration Appeals' ("BIA") order dismissing his appeal from an immigration judge's ("IJ") order of removal. We deny the petition.

**FACTS**

Campos arrived in the United States in April of 1983. In 1990, Campos was convicted of felony theft. Campos was convicted of violating what was then Arizona Revised Statutes § 28-697(A)(1),[1] aggravated driving under the influence ("DUI"), in April of 1997. At his change of plea hearing, Campos admitted that he was driving on that day, that his blood alcohol content was .164, and also that he did not have a valid license to drive. After his aggravated DUI conviction, in 2001 Campos obtained a waiver of inadmissibility and adjusted his status to lawful permanent resident.

On June 25, 2002, Campos pleaded guilty to another aggravated DUI. In his plea colloquy, Campos admitted running a red light, with a blood alcohol content of .233, and that he knew he was not licensed to drive at the time. Campos was sentenced to two and a half years in prison for his 2002 aggravated DUI conviction.

The Department of Homeland Security ("DHS") filed a Notice to Appear with the Immigration Court, charging Cam-

---

[1]Arizona Revised Statutes § 28-697 was renumbered to § 28-1383 in 1996. 1996 Ariz. Sess. Laws, ch. 76, §§ 3, 25 as amended by 1997 Ariz. Sess. Laws ch. 1, § 108 (effective Oct. 1, 1997); 1997 Ariz. Sess. Laws ch. 220, § 82. All further references to Arizona's aggravated driving under the influence statute will use the current numbering.

pos with removability under Immigration and Naturalization Act ("INA") §§ 237(a)(2)(A)(i)[2] and (ii),[3] for being an alien convicted of a crime involving moral turpitude and being an alien convicted of two or more crimes involving moral turpitude not arising out of a single scheme of criminal conduct. Campos filed a motion to terminate proceedings, arguing that his aggravated DUI convictions were not crimes of moral turpitude after this court's decision in *Hernandez-Martinez v. Ashcroft*, 329 F.3d 1117 (9th Cir. 2003). The IJ rejected Campos' argument, concluding that *Hernandez-Martinez* simply held that Arizona Revised Statutes § 28-1383 was divisible, and that the BIA erred in not examining the underlying conduct to make sure that the alien was not convicted of an aggravated DUI without actually driving a vehicle. Based upon Campos' three convictions for crimes involving moral turpitude, the IJ ordered Campos removed to Mexico. The BIA dismissed Campos' subsequent appeal, concluding that *Hernandez-Martinez* did not overrule the BIA's prior holding in *Matter of Lopez-Meza*, 22 I. & N. Dec. 1188 (BIA 1999), that a conviction for aggravated driving under the influence under Arizona Revised Statutes § 28-1383(A)(1) was a crime of moral turpitude.

---

[2]INA § 237(a)(2)(A)(i), as codified at 8 U.S.C. § 1227(a)(2)(A)(i), states:

> Any alien who—
>
> (I)  is convicted of a crime involving moral turpitude committed within five years (or 10 years in the case of an alien provided lawful permanent resident status under section 1255(j) of this title) after the date of admission, and
>
> (II)  is convicted of a crime for which a sentence of one year or longer may be imposed, is deportable.

[3]INA § 237(a)(2)(A)(ii), as codified at 8 U.S.C. § 1227(a)(2)(A)(ii), provides that:

> Any alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, is deportable.

## STANDARD OF REVIEW

We have jurisdiction to review the petition under 8 U.S.C. § 1252 as amended by § 106(a) of the REAL ID Act of 2005. *See Notash v. Gonzales*, 427 F.3d 693, 695-96 (9th Cir. 2005). Although we have no jurisdiction to review "any final order of removal against an alien who is removable by reason of having committed a criminal offense," including a crime of moral turpitude, 8 U.S.C. §§ 1252(a)(2)(C), 1227(a)(2)(A), we are not barred from hearing the constitutional claims or questions of law raised in Campos' petition. 8 U.S.C. § 1252(a)(2)(D). Whether an Arizona aggravated DUI for driving on a suspended or revoked license is a crime involving moral turpitude is a question of law that we review de novo. *See Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1017 (9th Cir. 2005). "In conducting this de novo review, however, we show considerable deference to the BIA's interpretation." *United States v. Esparza-Ponce*, 193 F.3d 1133, 1136 n. 5 (9th Cir. 1999).

## DISCUSSION

**[1]** The courts have defined moral turpitude as an "act of baseness or depravity contrary to accepted moral standards." *Guerrero de Nodahl v. INS*, 407 F.2d 1405, 1406 (9th Cir. 1969). "[I]t is the combination of the base or depraved act and the willfulness of the action that makes the crime one of moral turpitude." *Grageda v. INS*, 12 F.3d 919, 922 (9th Cir. 1993). "A crime involving the willful commission of a base or depraved act is a crime involving moral turpitude, whether or not the statute requires proof of evil intent." *Gonzalez-Alvarado v. INS*, 39 F.3d 245, 246 (9th Cir. 1994).

**[2]** "We determine whether a conviction qualifies as one involving moral turpitude by applying the categorical and modified categorical approaches." *Galeana-Mendoza v. Gonzales*, 465 F.3d 1054, 1057 (9th Cir. 2006). Arizona Revised Statutes § 28-1383(A)(1) states in pertinent part:

A.   A person is guilty of aggravated driving or actual physical control while under the influence of intoxicating liquor or drugs if the person does any of the following:

1.   Commits a violation of § 28-1381 [(driving under the influence)], § 28-1382 [(driving under the extreme influence)] or this section while the person's driver license or privilege to drive is suspended, canceled, revoked or refused . . . .

Ariz. Rev. Stat. § 28-1383(A)(1).

[3] The BIA concluded that a violation of § 28-1383(A)(1) was a crime involving moral turpitude in *Matter of Lopez-Meza*, 22 I. & N. Dec. 1188, 1194-96 (1999). In reaching its conclusion, the BIA reasoned that although a simple DUI did not involve moral turpitude, "when that crime is committed by an individual who knows that he or she is prohibited from driving, the offense becomes such a deviance from the accepted rules of contemporary morality that it amounts to a crime involving moral turpitude." *Id.* at 1196.

The BIA concluded that a violation of § 28-1383(A)(2), a DUI aggravated by multiple DUI convictions within five years[4] was not a crime involving moral turpitude in *In re Torres-Varela*, 23 I. & N. Dec. 78, 83-85 (2001).[5] In its opinion, the

---

[4]The statute was amended in 2006 to expand the time period to seven years. 2006 Ariz. Leg. Sess. ch. 395, § 5 (effective September 21, 2006).

[5]We cannot comment on the wisdom or consistency of distinguishing § 28-1383(A)(2) and § 28-1383(A)(1) as crimes of moral turpitude because the Constitution "limits our role to resolving the '[c]ases' and '[c]ontroversies' before us" therefore "we decide only the case at hand." *Hein v. Freedom from Religion Found., Inc.*, ___ U.S. ___, 127 S. Ct. 2553, 2572 (2007). As a result, we are bound to review the BIA's application of its decision in *Lopez-Meza*, and nothing more. *See Lopez-Molina v. Ashcroft*, 368 F.3d 1206, 1210-11 (9th Cir. 2004) (following precedent concerning statute at issue and refusing to apply precedent concerning a different, related statute not at issue in the case).

BIA specifically distinguished *Lopez-Meza*, however, and reaffirmed its holding that a violation of § 28-1383(A)(1) involved a culpable mental state. *Id*. at 85-86. The BIA noted that, "[t]he aggravating factor rendering the DUI conviction a crime involving moral turpitude in *Matter of Lopez-Meza* was the culpable mental state." *Id*. at 85.

**[4]** In *Hernandez-Martinez v. Ashcroft*, we held that "the statute under which Hernandez was convicted [§ 28-1383(A)(1)] is divisible and its range does not include only crimes of moral turpitude." 329 F.3d 1117, 1118 (9th Cir. 2003). We found that the BIA erred by failing to apply the modified categorical approach to determine if the alien in that case was driving or merely in control of a stationary vehicle. *Id*. Specifically, we stated that "[t]he Board's error of law was not to treat the statute as divisible." *Id*. at 1119. We also noted that although we defer to the BIA's interpretation of "crimes involving moral turpitude," we did not believe that the BIA intended to conclude that being in control of a parked car while intoxicated and with a suspended or revoked license was a crime of moral turpitude. *Id*. at 1118-19. We did not, however, overrule *Lopez-Meza* or reject its reasoning for actual driving while intoxicated.

**[5]** Giving due deference to the BIA's decision in *Lopez-Meza*, we conclude that a violation of Arizona Revised Statutes § 28-1383(A)(1) for aggravated DUI involving actual driving is a crime involving moral turpitude. *See Fisher v. INS*, 79 F.3d 955, 961 (9th Cir. 1996) (en banc) (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)). Driving while intoxicated is despicable, and when coupled with the knowledge that one has been specifically forbidden to drive, it becomes "an act of baseness, violence or depravity in the private and social duties which a [person] shows to [a] fellowman or to society in general, contrary to the accepted and customary rule of right and duty." *Jordan v. De George*, 341 U.S. 223, 235 n.7 (1951) (citing *Bouvier's Law Dictionary*, Rawles Third Revision, p. 2247).

The crime reflects a willful disregard for the law and a reckless indifference to the safety of others.

**[6]** A conviction under § 28-1383(A)(1) is not a mere combination of two simple and independent regulatory offenses. Driving drunk with knowledge that one does not have a valid license to drive is one "innately reprehensible act" (*United States v. Barner*, 195 F.Supp. 103, 108 (N.D. Cal. 1961)) involving two criminal offenses perpetrated at the same time with one willful and recklessly indifferent mental state. *See Matter of Medina*, 15 I. & N. Dec. 611, 613 (BIA 1976) (holding that criminally reckless conduct can constitute a crime of moral turpitude). One who commits the crime creates a substantial risk of harm or death to others, thereby breaching accepted rules of morality and duties owed to society. *Knapik v. Ashcroft*, 384 F.3d 84, 90 (3d Cir. 2004) (reckless conduct endangering the safety of others can be a crime of moral turpitude); *Reitz v. Mealy*, 314 U.S. 33, 36 (1941) (noting the dangers posed by negligent drivers and the necessity of licensing laws as "a form of protection against damage to the public"), *overruled on other grounds by Perez v. Campbell*, 402 U.S. 637, 652 (1971).

**[7]** Campos' convictions under Arizona Revised Statutes § 28-1383(A)(1) were crimes involving moral turpitude under INA § 237(A)(2)(a)(ii).

**DENIED.**

---

D.W. NELSON, Senior Circuit Judge, Dissenting:

In this appeal, we are tasked with answering a straightforward question: Does the act of driving while intoxicated, which is *not* a crime involving moral turpitude, somehow *become* morally turpitudinous when coupled with the act of driving without a license, which also is *not* a crime involving

moral turpitude? The majority states that precedent and administrative deference require us to answer this question in the affirmative, but I respectfully disagree.

## I.

As a preliminary matter, "moral turpitude" is a vague and nebulous standard, *Matter of Flores*, 17 I. & N. Dec. 225, 227 (BIA 1980), whose definition has never been fully settled, *Jordan v. De George*, 341 U.S. 223, 229 (1951). Consequently, it requires agency and judicial construction to give it meaning. *See Fernandez-Ruiz v. Gonzales*, 468 F.3d 1159, 1165 n.4 (9th Cir. 2006) ("Congress did not see fit to state what meaning it attributes to the phrase 'crime involving moral turpitude[.]' The legislative history leaves no doubt, however, that Congress left [it] to future administrative and judicial interpretation." (internal citation and quotation omitted)).

Fortunately, certain crimes already have been determined to be crimes involving moral turpitude ("CIMTs"), while others have been found to fall outside that classification. For example, the Supreme Court observed that "fraud has consistently been regarded" as a morally turpitudinous offense. *Jordan*, 341 U.S. at 229. In addition, several crimes involving acts of baseness or depravity—such as "murder, rape, robbery, kidnaping, voluntary manslaughter, some involuntary manslaughter offenses, aggravated assaults, mayhem, theft offenses, spousal abuse, child abuse, and incest"—have been found to be turpitudinous even absent the element of fraud. *Matter of Lopez-Meza*, 22 I. & N. Dec. 1188, 1193 (BIA 1999).

On the other hand, burglary, assault and battery, malicious mischief, alien smuggling, assault with a deadly weapon, indecency, rioting, and money laundering have all been found *not* to involve moral turpitude. *See Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1018 (9th Cir. 2005) (burglary); *Matter*

*of S*, 9 I. & N. Dec. 688 (BIA 1962) (assault and battery); *Rodriguez-Herrera v. INS*, 52 F.3d 238, 239-40 (9th Cir. 1995) (malicious mischief); *Matter of Tiwari*, 19 I & N. Dec. 875 (BIA 1989) (alien smuggling); *Carr v. INS*, 86 F.3d 949, 950-51 (9th Cir. 1996) (assault with a deadly weapon); *Matter of Mueller*, 11 I. & N. Dec. 268 (BIA 1965) (indecency); *Matter of O-*, 4 I. & N. Dec. 301 (BIA 1951) (rioting); *Goldeshtein v. INS*, 8 F.3d 645 (9th Cir. 1993) (money laundering).

Notably, both this court and the BIA have determined that the act of driving while intoxicated is *not* a crime involving moral turpitude. Indeed, in *Lopez-Meza*—the BIA decision relied upon extensively by the majority—the Board explained:

> We are aware of no case law specifically addressing the question whether simple DUI is a crime involving moral turpitude in the immigration context. The absence of such law suggests a long historical acceptance that a simple DUI offense does not inherently involve moral turpitude, and we are not persuaded to conclude otherwise. We find that the offense of driving under the influence under Arizona law does not, without more, reflect conduct that is necessarily morally reprehensible or that indicates such a level of depravity or baseness that it involves moral turpitude.

22 I. & N. Dec. at 1194.

Moreover, in *Murillo-Salmeron v. INS*, 327 F.3d 898, 902 (9th Cir. 2003), we noted with approval the BIA's reasoning in *Lopez-Meza* regarding simple DUIs. We also acknowledged "that simple DUI convictions, even if repeated, are not crimes of moral turpitude," citing another, more recent BIA decision, *Matter of Torres-Varela*, 23 I. & N. Dec. 78 (BIA 2001) (en banc). *Murillo-Salmeron*, 327 F.3d at 902. Further-

more, several other courts have reached the same conclusion. *See, e.g.*, *Knapik v. Ashcroft*, 384 F.3d 84, 90 (3d Cir. 2004) (stating that drunk driving "almost certainly does not involve moral turpitude"); *Franklin v. INS*, 72 F.3d 571, 590 n.17 (8th Cir. 1995) (recognizing that the "violation of regulatory laws such as gambling or drunk driving" does not involve moral turpitude); *In re Kelley*, 801 P.2d 1126, 1130 (Cal. 1990) (finding that a conviction for driving under the influence is not a crime involving moral turpitude); *State v. Thompson*, 674 P.2d 895, 899 (Ariz. Ct. App. 1983) (finding that driving while intoxicated is only a regulatory offense).

## II.

Thus, it is well settled that driving while intoxicated is not a morally turpitudinous act. Nonetheless, the majority concludes that Campos's act of drunk driving was *transformed* into a turpitudinous offense because he was not legally licensed to drive. In reaching this conclusion, the majority relies primarily on two cases—the BIA's decision in *Lopez-Meza* and our decision in *Hernandez-Martinez v. Ashcroft*, 329 F.3d 1117 (9th Cir. 2003). These decisions not only fail to support the majority's conclusion, but they counsel precisely the opposite finding.

### A.   The BIA's reasoning in *Lopez-Meza* is specious, inconsistent with established precedent, and owed no deference in this court.

In *Lopez-Meza*, as noted above, the BIA recognized that driving under the influence (i.e., a "simple DUI") is *not* a crime of moral turpitude. 22 I. & N. Dec. at 1194. The BIA went on to conclude, however, that a conviction for a DUI *does* involve moral turpitude if the defendant had a suspended, canceled, revoked, or refused license at the time of the offense (i.e., an "aggravated DUI"). *Id.* at 1194-95. The Board concluded that a distinction could be made along moral grounds between a simple DUI and an aggravated DUI

because the latter requires the driver to *know* that he is not supposed to drive. The Board stated:

> A conviction for aggravated DUI under . . . section 28-1383(A)(1) requires a showing that the offender was "knowingly" driving with a suspended, canceled, revoked, or refused license. Thus, in order for a motorist to be convicted [of this crime], the state must prove that the defendant knew or should have known that his license was suspended. Consequently, aside from the culpability that is often, but not inherently, present in a simple DUI offense, an individual who drives under the influence in violation of . . . section 28-1383(A)(1) does so with the knowledge that he or she should not be driving under any circumstances. We find that a person who drives while under the influence, knowing that he or she is absolutely prohibited from driving, commits a crime so base and so contrary to the currently accepted duties that persons owe to one another and to society in general that it involves moral turpitude.

*Id.* at 1195-96 (internal citations omitted). In this appeal, the majority relies in large part on the BIA's decision, stating that "the knowledge that one has been specifically forbidden to drive" is enough to transform a simple DUI into a turpitudinous offense. Maj. Op. at 12322.

However, we should *not* follow the reasoning in *Lopez-Meza* because distinguishing simple DUIs from aggravated DUIs along moral grounds is neither legally sustainable nor logically sound. First, if any aspect of Campos's offense approached the "base, vile, or depraved" standard, it was his decision to drive drunk—not his decision to drive without a license. But, as noted above, drunk driving has already been determined by the BIA and acknowledged by this circuit to be non-turpitudinous. *See Murillo-Salmeron*, 327 F.3d at 902. In fact, it is clear that even driving drunk *three* times is not turpi-

tudinous conduct, *see id.*; *Torres-Varela*, 23 I. & N. Dec. 78, and it is patently unreasonable to conclude that driving under the influence only once, even with a suspended license, somehow carries with it greater moral opprobrium than driving drunk repeatedly.

Put differently, if being convicted on three separate occasions for driving under the influence does not so offend "the moral law . . . [such] that the offender is brought to public disgrace, is no longer generally respected, or is deprived of social recognition," *Jordan*, 341 U.S. at 237 n.9 (citation omitted), doing so only once surely cannot meet this standard. Indeed, the BIA's *ratio decendi* in *Lopez-Meza* was that a simple DUI is a "marginal crime" that "toes the line" of moral turpitude, and driving with a suspended license is just enough to 'push' the offense over that line. 22 I. & N. at 1196. However, if this were the correct way to conceptualize moral turpitude, committing a second and third DUI would surely give more of a 'push' toward turpitude than would driving with a suspended license, as the latter clearly does less to affront moral sensibilities—if it affronts them at all—than driving drunk. To be sure, driving without a license, on its own, is a quintessential example of a regulatory, non-turpitudinous offense. *See Benitez v. Dunevant*, 7 P.3d 99 (Ariz. 2000) (stating that the specific act of driving with a suspended license, even when that license has been suspended because of a previous DUI conviction, is *not* a crime involving moral turpitude).

Second, it is sophistical to distinguish driving drunk with a suspended license from driving drunk multiple times on the theory that the former offense requires a showing that the offender "knew" he was not supposed to drive. *See Lopez-Meza*, 22 I. & N. at 1196; Maj. Op. at 12322. Surely, *any individual* who drives drunk knows that he is not supposed to do so, and this is especially true if that individual has been convicted several times for that offense. If "willful disregard for the law and a reckless indifference to the safety of others" is

the standard we are to apply in determining moral turpitude, as the majority suggests, *see* Maj. Op. at 12323, getting behind the wheel while intoxicated on multiple occasions certainly demonstrates greater disregard and indifference than doing so only once without a license. What is more, if whether crimes were turpitudinous depended on whether the offenders *knew* they were violating the law, then virtually *all* offenses could be CIMTs. The Arizona Supreme Court's reasoning in *Benitez*, cited *supra*, is illustrative:

> [T]he offense [of driving on a suspended license], in one sense, does question [the defendant's] honesty because he did something he was expressly required by law not to do. But this is true of virtually all criminal offenses . . . . Moral turpitude is implicated when behavior is morally repugnant to society. It is not implicated when the offense merely involves poor judgment, lack of self-control, or disrespect for the law involving less serious crimes.

7 P.3d at 104.

Third, *Lopez-Meza* and the majority opinion run afoul of the well-established and logical rule that a finding of moral turpitude cannot be manufactured by combining two offenses that are not morally turpitudinous. The BIA recognized this principle in *Matter of Short*, 20 I. & N. Dec. 136 (BIA 1989), stating unequivocally that "[m]oral turpitude cannot be viewed to arise from some undefined synergism by which two offenses are combined to create a crime involving moral turpitude, where each crime individually does not involve moral turpitude. There must be some particular criminal activity with which to evaluate whether the nature of that activity involves moral turpitude." *Id.* at 139. Of course, this rule makes sense, for moral turpitude is a characteristic *inherent in* or *intrinsic to* an act. *See Galeana-Mendoza v. Gonzales*, 465 F.3d 1054, 1058 (9th Cir. 2006) (stating that to determine whether an offense is one of moral turpitude, "we consider the

intrinsic or inherent nature of the crime"); *Matter of Esfandiary*, 16 I. & N. Dec. 659, 660 (BIA 1979) ("In order to determine whether a crime involves moral turpitude, we must look to the nature of the crime itself."). Consequently, moral turpitude cannot be created by 'aggregation.'

Judge Rosenberg, dissenting from the BIA's decision in *Lopez-Meza*, artfully highlighted the folly in the Board's approach, explaining that the Board attempted to "bootstrap the intent requirement attached to the regulatory offense of unlawful driving to create a DUI offense that involves moral turpitude." 22 I. & N. at 1203. I agree whole-heartedly with Judge Rosenberg, as this type of "undefined synergism" is neither a lawful nor logical method for determining whether conduct is morally turpitudinous. *Id.* Additionally, neither the majority opinion nor the government can provide even a single example of a crime involving moral turpitude created by combining two non-turpitudinous offenses. And in *Torres-Varela*, cited *supra*, which was decided after *Lopez-Meza*, the Board reaffirmed its holding in *Smart*, concluding that "multiple convictions for the same DUI offense, which individually is not a crime involving moral turpitude, do not, by themselves, aggregate into a conviction for a crime involving moral turpitude." 23 I. & N. Dec. at 86. In fact, this principle was the primary basis for the Board's decision. *See id.* (citing *Short*, 20 I. & N. Dec. 136). This is significant because this principle is in direct conflict with the BIA's reasoning in *Lopez-Meza* and the majority's reasoning here.

In sum, it is illogical and unreasonable to conclude that because Campos knew he was not supposed to drive his conduct was morally turpitudinous. Even if we generally defer to the BIA's interpretation of what constitutes a crime involving moral turpitude under INA § 237(a)(2)(A), "we are not obligated to accept an interpretation that is contrary to the plain and sensible meaning of the statute." *Randhawa v. Ashcroft*, 298 F.3d 1148, 1151 (9th Cir. 2002). As heretofore explained, I believe the BIA's decision in *Lopez-Meza* is logically

unfounded and contrary to well-established law; therefore, no deference is owed. Moreover, even if this were a close question—which I do not believe it to be—because moral turpitude is a "nebulous concept," and there is a "longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien," *INS v. Cardoza-Fonseca*, 480 U.S. 421, 446 n.30 (1987), this canon of construction counsels us to find that driving under the influence with a suspended license is *not* an act of moral turpitude. *See also Hernandez v. Ashcroft*, 345 F.3d 824, 840 (9th Cir. 2003) (explaining that, in the immigration context, "doubts are to be resolved in favor of the alien").

**B. Our holding in *Hernandez-Martinez* does not support the conclusion that Campos's conduct involved "moral turpitude."**

In addition to invoking the BIA's reasoning in *Lopez-Meza*, the majority also relies on our holding in *Hernandez-Martinez v. Ashcroft*, 329 F.3d 1117 (9th Cir. 2003). Maj. Op. at 12322. This reliance is misplaced.

In *Hernandez-Martinez*, the defendant was convicted for aggravated DUI under the same Arizona statute at issue here. After being found removable by an immigration judge, the BIA affirmed and determined that a conviction under the statute was *categorically* a crime involving moral turpitude. We reversed, however, finding that an individual could be convicted under the statute without committing a turpitudinous offense. *Id.* at 1119. Because the immigration judge did not conduct a modified categorical inquiry by evaluating the petitioner's specific conduct in light of the "moral turpitude" standard, we granted the petition. *Id.*

The majority states that *Hernandez-Martinez should be interpreted as preserving the rule put forth in Lopez-Meza*: that driving drunk with a suspended license is a crime involving moral turpitude. Maj. Op. at 12322. To support this asser-

tion, the majority cites the following language from *Hernandez-Martinez*:

> The statute is divisible. One may be convicted under it for sitting in one's own car in one's own driveway with the key in the ignition and a bottle of beer in one's hand. We defer to the Board in interpreting terms in the immigration law. But we find it difficult to believe that our society holds conduct in one's own backyard to be "inherently base, vile or depraved and contrary to the accepted rules of morality" . . . . Drunken driving is despicable. Having physical control of a car while drinking is not.

*Id.* at 1118-19.

To be sure, by distinguishing the act of driving drunk from the act of "drinking in one's own car in one's own driveway," and by stating that driving drunk is "despicable," the above language, if read in isolation, suggests that Campos's conduct may have been morally turpitudinous. However, there are at least three reasons why *Hernandez-Martinez* does not counsel that conclusion.

First, it warrants repeating that the holding in *Hernandez-Martinez* was relatively narrow: we held that a conviction under Arizona's aggravated DUI statute does not *categorically* constitute a crime involving moral turpitude. In reaching this conclusion, we needed only to provide a single example of non-turpitudinous conduct that violates the statute—the act of sitting in one's car with a suspended license while drunk is the example we put forth. *See id.*; *cf. Li v. Ashcroft*, 389 F.3d 892, 895-96 (9th Cir. 2004) (noting that a court's "categorical comparison" is over as soon as it determines that the defendant "could have been convicted under the statute for conduct that would not satisfy the generic crime"). Notably, we did not endeavor in *Hernandez-Martinez* to explain what *does* constitute moral turpitude, nor was that question prop-

erly before us. Indeed, even if we read the statement that "the statute is divisible" to suggest that driving drunk without a license involves moral turpitude, that question "was not presented for review, was not given reasoned consideration, and was unnecessary for the decision, [therefore] it is not binding precedent." *Sinotes-Cruz v. Gonzales*, 468 F.3d 1190, 1203 (9th Cir. 2006) (citing *Barapind v. Enomoto*, 400 F.3d 744, 750-51 (9th Cir. 2005) (en banc) (per curiam)); *see also Best Life Assurance Co. of Ca. v. Comm'r*, 281 F.3d 828, 834 (9th Cir. 2002) (defining dictum as "a statement made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential" (internal quotation marks and citation omitted)).

Second, although we found in *Hernandez-Martinez* that the aggravated DUI statute is divisible, our statement that driving drunk is "despicable" cannot be interpreted to mean that doing so is morally turpitudinous, for such an interpretation would conflict directly with established precedent. *See Murillo-Salmeron*, 327 F.3d at 902. Moreover, while the statement may suggest that greater moral culpability inheres in driving drunk than merely sitting in one's car while intoxicated, it does not suggest that a DUI necessarily involves "inherently base, vile, or depraved" conduct. In other words, we held in *Hernandez-Martinez* that driving a vehicle, as opposed to merely sitting in one, is a *necessary* condition for a finding of moral turpitude under the statute, yet the majority erroneously interprets that condition to be *sufficient* for such a finding. There is no basis in *Hernandez-Martinez* for that conclusion; in fact, there is no analysis whatsoever in our decision regarding what counts as conduct involving "moral turpitude," which is not surprising, given the narrow question that was before us. In this vein, if read in context, it is evident that the statement was little more than a "rhetorical flourish" —it was "certainly not intended to be a statement of law, binding on future panels." *Cetacean Community v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).

Third, and most significantly, Judge Wardlaw's concurrence in *Hernandez-Martinez* makes it clear that the panel's holding does not support the rule that driving on a suspended license while intoxicated is turpitudinous. In fact, Judge Wardlaw expressly stated that the panel's decision did *not* stand for that principle, seemingly anticipating the majority opinion in this case. *Hernandez-Martinez*, 329 F.3d at 1119. She opined:

> I write to clarify that the offense of Driving Under the Influence ("DUI") with a suspended license, as defined by Arizona Revised Statute § 28-697(A)(1), is not a deportable crime of moral turpitude as a matter of either Ninth Circuit or BIA caselaw. The source of confusion may very well be the BIA's schizophrenic law on the subject. *Compare Matter of Lopez-Meza . . . with Matter of Torres-Varel[ ]a . . . .*
>
> Nothing in either the federal or the Arizona statutes suggests that the regulatory offense of DUI becomes an inherently base, vile and deportable crime of moral turpitude simply because the offender's driver's license has been suspended. The BIA's own case law casts substantial doubt on its anomalous holding to the contrary: according to the en banc BIA, even a three-time DUI offender has not committed a crime of moral turpitude. Applying the analysis in *Torres-Varel[ ]a* to this case makes clear that . . . § 28-697(A)(1) should not be construed any differently [than] § 28-697(A)(2). Neither subsection describes a crime of moral turpitude.

*Id.* (internal citations and quotations omitted). Obviously, for the same reasons the majority opinion is not binding on our decision in the instant case, Judge Wardlaw's concurrence is similarly non-binding. Nonetheless, her concurrence makes clear that our decision in *Hernandez-Martinez* was limited to

the narrow categorical question before the panel, and, more importantly, it summarizes the reasons why the majority's conclusion is erroneous.

### III.

In sum, while I certainly recognize that driving while intoxicated can have serious and harmful consequences, I am unable to concur in an opinion that contravenes well-established law and is belied by logic. For the foregoing reasons, I respectfully dissent.